---

*In re* KING.

*(Circuit Court, M. D. Tennessee. July 28, 1892.)*

1. HABEAS CORPUS—REFUSAL TO ISSUE WRIT.
   The writ of *habeas corpus*, though a writ of right, does not issue as a matter of course; and under Rev. St. § 755, it may be refused if, upon the showing made by the petition, it appears that the petitioner, if brought into court, would be remanded.

2. SAME—JURISDICTION—ERRORS.
   A writ of *habeas corpus* cannot be used as a substitute for a writ of error, for the purpose of reviewing alleged errors, either of fact or law, occurring at a criminal trial, but, being in the nature of a collateral attack upon the judgment, is limited to the inquiry whether the trial court has acted without jurisdiction, or has exceeded its jurisdiction, so as to render the sentence void.

3. SAME—STATE AND FEDERAL COURTS.
   On application to a federal court for a writ of *habeas corpus* to release a prisoner convicted of crime by a state court, the judge has a discretion whether the prisoner shall be put to his writ of error to the highest state court, or whether the court will proceed to summarily determine whether he is restrained of his liberty in violation of the constitution of the United States.

4. SAME—GROUNDS OF REVIEW—DISQUALIFICATION OF JURORS.
   A federal circuit court has no jurisdiction to review on *habeas corpus* a judgment of conviction by a state court in a criminal case, upon the ground that one of the jurors, before the trial, had expressed the opinion that the prisoner was guilty, or that pending the trial a juror had privately conversed with other persons about the case, such matters being exclusively within the jurisdiction of the trial and appellate courts of the state.

5. SAME—MISCONDUCT OF JURY.
   In a murder trial in a state court the fact that the jury, while having the case under consideration, went in a body to an adjoining state, and visited various places there, did not terminate their official character, or dissolve their relation to the court, so as to deprive them of jurisdiction to determine the case, and, if their action constituted misconduct, it was a matter requiring explanation to the trial court, and afforded no ground for interference by a federal court by writ of *habeas corpus.*

6. SAME—HEARING AT CHAMBERS—APPEAL.
   No appeal lies from an order of the circuit judge refusing to issue a writ of *habeas corpus* after hearing at chambers. *Carper* v. *Fitzgerald,* 7 Sup. Ct. Rep. 825, 121 U. S. 87, followed.

7. CONSTITUTIONAL LAW—LIMITATION ON FEDERAL POWER—SPEEDY TRIAL, ETC.
   The provision of the federal constitution that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by a jury of the state and district wherein the crime shall have been committed," etc., qualifies the judicial powers granted to the United States, and has no application to the powers exercised by the states.

At Chambers.[1] Application in behalf of H. Clay King for a writ of *habeas corpus.* Denied.

---

[1] Petitioner's motion for an appeal was disallowed on the ground that the proceedings were at chambers, upon the authority of Carper v. Fitzgerald, 121 U. S. 87, 7 Sup. Ct. Rep. 825.

*G. W. Pickle*, Atty. Gen., for the State.
*W. G. Weatherford, J. M. Greer*, and *W. W. King*, for defendant.

JACKSON, Circuit Judge.   In the consideration of this application there are a few well-settled general principles which should be borne in mind.   While the writ of *habeas corpus* is a writ of right, being the remedy which the law gives for the enforcement of the civil right of personal liberty, it will not issue as a matter of course.   Section 755, Rev. St., provides that the court to which the application is made shall forthwith award the writ, "unless it appears from the petition itself that the party is not entitled thereto."   It was accordingly said by the supreme court in *Ex parte Terry*, 128 U. S. 301, 9 Sup. Ct. Rep. 77, that "the writ need not, therefore, be awarded, if it appears upon the showing made by the petitioner that if brought into court, and the cause of his confinement inquired into, he would be remanded to prison."   Although this writ is most frequently resorted to because of what is done or omitted in the administration of the criminal law, the judicial proceeding under it is not to inquire into the criminal act charged against the petitioner, but the inquiry is limited and confined to the petitioner's right to liberty or discharge from custody notwithstanding the act.   It is not a proceeding in the prosecution of the offense or crime with which the petitioner is charged or has been convicted.   On the contrary, it is a new suit of a civil nature, brought by the petitioner to enforce a civil right of personal freedom, which he claims as against those who are holding him in custody or restraining him of his liberty.   *Ex parte Tom Tong*, 108 U. S. 556, 2 Sup. Ct. Rep. 871.

The petitioner's claim in the present case is that, notwithstanding his trial and conviction of murder in the first degree, under which he is now held in custody by the sheriff of Shelby county, awaiting the execution of the sentence of death, pronounced against him by the highest court of the state, he should be discharged from such custody, and be restored to his liberty, because in said trial and conviction he was denied certain rights, privileges, and immunities guarantied to him by the constitution of the United States, which are specially set forth in his petition, and which, it is claimed, rendered the sentence pronounced against him void, and his imprisonment thereunder unlawful, without reference to his guilt or innocence of the criminal act for which he was tried and convicted.   It is well settled by a uniform course of decisions in the supreme court of the United States that the writ of *habeas corpus* in cases like the present cannot be converted into a writ of error, or be used as a substitute for a writ of error, to review or reverse the judgment of the court pronouncing the sentence complained of, for alleged errors of either law or fact committed in the course of the trial.   Under the writ of *habeas corpus*, this court can exercise no appellate jurisdiction over the proceedings of the trial court or courts of the state, nor review their conclusions of law or findings of fact, and pronounce them erroneous.   The writ of *habeas corpus* is not a proceeding for the correction of errors, (*Ex parte Lange*, 18 Wall. 163; *Ex parte Siebold*, 100 U. S. 375; *Ex parte Curtis*,

106 U. S. 275, 1 Sup. Ct. Rep. 381; *Ex parte Carll*, 106 U. S. 521, 1 Sup. Ct. Rep. 535; *Ex parte Bigelow*, 113 U. S. 328, 5 Sup. Ct. Rep. 542; *Ex parte Yarbrough*, 110 U. S. 651, 4 Sup. Ct. Rep. 152; *Ex parte Crouch*, 112 U. S. 178, 5 Sup. Ct. Rep. 96; *Ex parte Wilson*, 114 U. S. 420, 421, 5 Sup. Ct. Rep. 935; *Ex parte Royall*, 117 U. S. 241, 6 Sup. Ct. Rep. 734; *In re Snow*, 120 U. S. 274, 7 Sup. Ct. Rep. 556; *In re Coy*, 127 U. S. 731, 8 Sup. Ct. Rep. 1263; *In re Wight*, 134 U. S. 136, 10 Sup. Ct. Rep. 487; *Stevens* v. *Fuller*, 136 U. S. 478, 10 Sup. Ct. Rep. 911;) the reason or principle upon which this rule is settled being, as stated by Mr. Justice BRADLEY in *Ex parte Nielsen*, 131 U. S. 182, 9 Sup. Ct. Rep. 672, that a *habeas corpus* proceeding which impeaches the validity of a judgment or sentence of a court having jurisdiction of the offense and person of the accused is a collateral attack, and as such it is limited to the inquiry, in cases like the present, whether the trial court has acted without jurisdiction, or has exceeded its jurisdiction so as to render its sentence or judgment void. After conviction of crime in the highest court of a state, which the accused claims to have been reached in disregard or violation of rights secured to him by the constitution or laws of the United States, two remedies are open to his relief in the federal courts,—he may take his writ of error to the supreme court of the United States, and in that proceeding have a review of the error alleged to have been committed by the state courts to the prejudice of the rights, privileges, and immunities guarantied him by the constitution and laws of the United States; or he may apply for his discharge from custody under such conviction on the ground that the court or courts pronouncing sentence against him had no jurisdiction of either his person, or of the offense with which he is charged, or had. for some reason, lost or exceeded its jurisdiction, so as to render its judgment a nullity. In this latter proceeding, as already stated, there can be no review of the action or rulings of the state court or courts, even upon federal questions, which might be reviewed by the supreme court upon writ of error.

It is also settled that, whether the application for writ of *habeas corpus* is made before or after conviction in the state court, the circuit court of the United States has a discretion whether the petitioner shall be put to his writ of error to the highest court of the state, or whether he will proceed by writ of *habeas corpus* summarily to determine whether the party is restrained of his liberty in violation of the constitution of the United States. *Ex parte Royall*, 117 U. S. 241, 252, 253, 6 Sup. Ct. Rep. 734; *In re Duncan*, 139 U. S. 449, 11 Sup. Ct. Rep. 573; and *In re Wood*, 140 U. S. 289, 11 Sup. Ct. Rep. 738. In the latter case the rule announced in *Ex parte Royall* is reaffirmed, with the additional statement "that, after the final disposition of the case by the highest court of the state, the circuit court, in its discretion, may put the party who has been denied a right, privilege, or immunity, claimed under the constitution of the United States, to his writ of error from the supreme court, rather than interfere by *habeas corpus;*" and it is there said by the court that these principles have special application, where there is no pretense

that the statute or law of the state under which the petitioner was prosecuted is repugnant to the constitution or laws of the United States. There is no such claim in the present case. In the consideration of the present application it should also be borne in mind that "it was not intended by congress that circuit courts of the United States should, by writs of *habeas corpus*, obstruct the ordinary administration of the criminal laws of the state through its own tribunals." *In re Wood*, 140 U. S. 278, 11 Sup. Ct. Rep. 738. It is further said by the supreme court in that case that "it often occurs in the progress of a criminal trial in a state court, proceeding under a statute not repugnant to the constitution of the United States, that questions occur which involve the construction of that instrument and the determination of rights asserted under it; but that does not justify an interference with its proceedings by a circuit court of the United States upon a writ of *habeas corpus*, sued out by the accused, either during or after the trial in the state court;" for "upon the state courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the constitution of the United States and the laws made in pursuance thereof, wherever those rights are involved in any suit or proceeding before them;" and "if they fail therein, and withhold or deny rights, privileges, or immunities, secured by the constitution and laws of the United States, the party aggrieved may bring the case from the highest court of the state, in which the question could be decided, to this court for final and conclusive determination. *Robb* v. *Connolly*, 111 U. S. 637, 4 Sup. Ct. Rep. 544."

Testing the present application by the foregoing principles and considerations, should this court, upon the showing made by the petition and accompanying documents, including the transcript of the record in the supreme court of the state, disclosing the questions presented for decision and disposed of by the judgment of that court, award the writ of *habeas corpus?* If the acts and proceedings of the state courts complained of are such as this court can properly consider upon *habeas corpus*, and such as render the conviction and imprisonment void, and entitle the petitioner to his discharge, is it the duty of the court, under the facts and circumstances of the case as disclosed, and in the exercise of its discretion, to grant the writ, and proceed summarily to determine whether he is restrained of his liberty in violation of the constitution of the United States, or to put the petitioner to his writ of error to the supreme court? If it appears from the showing made by the petitioner that if the writ were awarded, and the facts stated and relied on in the petition were established, he would, nevertheless, be remanded to his present custody and imprisonment, the application for the writ should be denied. This brings us to the consideration of the special matter set up and relied on as entitling the petitioner to the writ of *habeas corpus*, and to be discharged from custody.

1. The first ground set up in the application is that one of the jury which tried the petitioner, viz., J. H. Smith, was not in fact an impartial juror, having both formed and expressed an opinion that petitioner

was "guilty and should be strung up," and this fact was not known to petitioner until after the trial and verdict aforesaid.

2. The second ground is that another juror in said case, one R. T. Mustin, held private conversations with various persons concerning said case, while the same was before the jury for its impartial consideration and judgment. These were questions clearly within the jurisdiction of the trial and appellate courts of the state, which said courts were competent to decide, and their determination thereof, as they were passed upon and adjudged, cannot be reviewed by this court upon a writ of *habeas corpus*, without making that writ serve the purpose of a writ of error.

3. So, as to the juror Mustin having formed and expressed an opinion hostile to petitioner before he went upon the jury, notwithstanding his oath to the contrary, which it is stated petitioner found out after said trial and supposed conviction, which he attempted to present to the supreme court of the state by proper petition, it is not shown when the alleged fact was found out, whether before or after the appeal was taken. It is not shown that there is no law of the state, or opportunity after the discovery of the juror's hostility or disqualification, of bringing such fact to the attention of the trial court. The matter, if material, was for the consideration of that court. So ruled in *Re Wood*, 140 U. S. 278, 11 Sup. Ct. Rep. 738. There the petitioner alleged that he was ignorant, until after conviction, of the exclusion of his own race, because of their race, from the lists of grand and petit jurors, so as to bring his case within the rule announced in *Neal* v. *Delaware*, 103 U. S. 370, 394. No authority has been brought to the attention of the court, or has come under its observation, holding that if, at any time after trial and conviction in criminal cases, it is ascertained or discovered that a juror, who duly qualified himself, had in fact, before going upon the jury, formed or expressed an opinion hostile to the accused, the judgment of the court, based upon the verdict of such jury, would be void, and the party imprisoned thereunder entitled to be discharged upon a writ of *habeas corpus*. It would be a dangerous principle to establish. But, if the fact were established, what right, under the constitution and laws of the United States, was violated? The constitutional provision that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law," is a qualification and regulation relating exclusively to the judicial powers granted by the constitution of the United States, and has no reference to the judicial power possessed and exercised under state authority.

4. The remaining and principal ground relied on in support of the present application is that, while the jury had the petitioner's case under consideration, they left the state of Tennessee, crossed the Mississippi river into the state of Arkansas, without his consent, and went from point to point in the latter state, beyond and out of the jurisdiction of the court in which the case was pending, whereby, it is alleged, such jury lost its

official character, and ceased to be a jury in said cause pending in the criminal court of Shelby county, and thus dissolved their relations with said court, and, after so ceasing to be a jury, found a verdict, which they had no authority to do, and the same is a nullity. How did this temporary absence of the jury from the state so dissolve or terminate its official character as to render its verdict void? The trip did not destroy the Tennessee citizenship of the jurors, or even suspend such citizenship. It did not touch or affect in any way their qualification as jurors. It temporarily suspended the trial court's personal jurisdiction over them. It also temporarily suspended the legal control of the officers in whose charge they were placed while the jury was beyond the state's border. But the act of going beyond the territorial boundary of the state in no way impaired, destroyed, or affected the jurisdiction of the criminal court of Shelby county over either the person of the accused or the offense with which he was charged. When the jury returned within the limits of the state the authority and control of the court was then re-established; so was that of the officers of the court having them in charge. How can such temporary absence from the state, any more than any other unlawful dispersion of the jury, which would place them for the time beyond or out of the control of the court and its officers, terminate their official character or dissolve their relation to the court? It is not perceived upon what sound principle such proposition can be maintained. The act of crossing the Mississippi river, and going to a locality where the officers in charge of the jury had no legal authority or control over them, may, in contemplation of law, have been an unlawful dispersion or separation, and may have constituted such misconduct as called for explanation on the part of the state to show that it was attended with no prejudice to the accused. It appears from the record that such explanation was given, by showing that while crossing the river, and while on the Arkansas shore, the jury remained together and apart from all other persons, and that, during the time they were beyond the state's border, they had or held no conversation or communication with other parties. With the sufficiency or insufficiency of such explanation this court has, of course, nothing to do upon the present application. If the jury had gone into the post office building at Memphis, or upon the lot upon which that building stands, they would have equally passed beyond the territorial jurisdiction of the state of Tennessee, and of the criminal court of Shelby county. The purpose for which they might have entered the government building, or upon the parcel of ground upon which that building stands, would have been wholly immaterial; for, while there, they would have been upon territory as much beyond the territorial limits and jurisdiction of the state of Tennessee as the District of Columbia or the Arkansas shore of the Mississippi river; it being well settled that over that building, and over the plat of ground on which it stands, the United States have exclusive jurisdiction,—so exclusive that the state cannot take cognizance of any offense committed therein or thereon, nor send its officers there, either to execute process or to make arrests. Would the courts of the country entertain for

a moment the proposition that a jury, having under consideration a criminal case, would cease to be a lawful jury, or be dissolved as such, and lose its official character and its relations to the state court by which it was impaneled, by merely entering the government post office, or strolling over the lot on which it stands, so that their verdict, upon resuming their duties to the state court, would be vitiated and become a nullity? There is no principle, and certainly no authority, upon which such proposition can be sustained.

But, aside from this, the question as to the effect and bearing of that trip across the Mississippi river upon the rights of the accused was for the consideration of the trial court. That court was competent and had the requisite jurisdiction to pass upon and decide the question, and the petitioner set it up and presented it for decision both to the trial court and to the supreme court of the state, and the determination of the question against him by said courts cannot be properly reviewed or re-examined by this court upon an application for or upon a writ of *habeas corpus*, without making such application or writ serve the purpose of a writ of error. No such authority is given to the courts of the United States by the statutes defining and regulating their jurisdiction. The state courts having properly taken jurisdiction of this question, raised and presented by the petitioner, the decision of the highest court of the state upon it can neither be reviewed nor reversed by this court; and, under the facts and circumstances of the case, if this court had any doubt upon the point, it should, in the exercise of the discretion allowed it, properly deny the application for the writ of *habeas corpus*, and put the petitioner to his writ of error.

From the case presented by the petition and the accompanying documents, I am clearly of opinion that the petitioner could not obtain his release if the writ of *habeas corpus* were awarded. It thus appearing from the petition itself that the petitioner is not entitled to the writ, the application, therefore, is accordingly denied, and the rule to show cause is discharged.

The following further proceedings were then had, to wit:

The petitioner prayed an appeal from the decision of the circuit judge. It was argued by counsel for the petitioner that the circuit judge sat as a court, and that hence an appeal was a matter of right under the acts of congress. This view was combated by the attorney general of Tennessee, G. W. Pickle, on behalf of the state. Thereupon the circuit judge, in an oral opinion, citing in support of his judgment *Carper v. Fitzgerald*, 121 U. S. 87, 7 Sup. Ct. Rep. 825, denied the appeal, on the ground that the proceedings were at chambers, by the circuit judge, and not by the circuit court.