# IN THE MATTER OF THE APPLICATION OF SAMUEL D. HAUSMAN, FOR A WRIT OF HABEAS CORPUS.

## February 11, 1913.

1. *Warrant of arrest, mittimus—Sufficiency, requirements not technical:* Warrants of arrest, and of commitment, are not to be tested by the same technical standards as those by which an indictment is tested, but are sufficient if they disclose even by general language or statement of conclusions, a prior lawful basis therefor.

2. *Constitutional law—Police power—Opium:* The statute entitled "An act to prohibit the importation and use of opium," 35 Stat. 614, is a valid exercise of the police power of Congress.

3. *Habeas corpus—Practice and procedure—Preliminary order to show cause:* In habeas corpus proceedings, the issuance of a preliminary rule *nisi* is proper practice, and the usual practice, where the petition does not show a prima facie case of merit, or, at least, where some exigency does not require the immediate issuance of the writ.

*Habeas Corpus:* Petition for writ; and Motion to reconsider order discharging rule *nisi.*

*George A. Davis, A. D. Larnach,* and *E. A. C. Long,* for petitioner.

*C. C. Bitting,* Assistant U. S. Attorney, for respondent.

CLEMONS, J.   Counsel presented to me at chambers a petition for writ of habeas corpus, alleging the petitioner's arrest on a warrant of the United States district attorney charging the petitioner with having on February 7, 1913, at and within this district, "unlawfully, knowingly and feloniously conceal(ed) and facilitate(d) the concealment of certain opium and preparation and derivative of opium, which . . . was subsequent to the 1st day of April, A. D. 1909, brought in and imported into the United States from some port to the affiant unknown," and "charg(ing) that said acts were in violation of the act of Congress approved February 9, 1909." 35 Stat. 614. The petition further alleged the petitioner's unlawful imprisonment and restraint of liberty at the hands of the marshal under said warrant, basing the ground of illegality upon the fact that this act of Congress is "indefinite, uncertain, unconstitutional and void." With the petition was also presented by petitioner's counsel an order to show cause why the writ should not issue. This order was granted.

At the hearing on the rule *nisi,* which for the convenience of petitioner's counsel was held within a few hours after the filing of the petition, the marshal, for lack of time, made no formal return in writing but merely presented the warrant of arrest with complaint attached, and the temporary mittimus issued by the commissioner. The warrant and mittimus recite, respectively, the complaint of, and arrest for, "violation of the act of Congress . . . of February 9, 1909, in that the said Samuel D. Hausman did unlawfully, knowingly and feloniously conceal and facilitate the con-

cealment of certain opium unlawfully brought into the United States of America,"—the understanding being that there should be filed as soon as possible a return setting forth the complaint, warrant of arrest, and mittimus and the marshal's custody of the petitioner thereunder.

[1] In behalf of the petitioner it was contended that the writ of habeas corpus should issue, first, because of the failure of the mittimus, as well as the warrant of arrest, to show the petitioner's knowledge of any opium's having been imported contrary to law. This ground is not set forth in the petition, but it may, for sake of argument, be regarded as supplied by amendment. The reference made to Church on Habeas Corpus, 2d ed., secs. 94, 277, 286, to the effect that a warrant of arrest or of commitment may, by habeas corpus, be "impeached for any radical defect," or for failure to state the offense "with reasonable certainty," gives no support to this contention. These warrants of arrest and of commitment, which are merely the direction of the court to the marshal, and presuppose prior lawful basis therefor, are not to be tested by the same exact standards as the fundamental matters of pleading and procedure. The technical rules of pleading as applied to indictments, have no place in determining the sufficiency of a court's order to its officer, which, though important enough, is still merely incidental to a basic order which must itself be sufficient in any event and, until specially shown to be insufficient, may fairly and safely be presumed to be so. The opinion of the circuit court of appeals (Lurton, Circuit Judge, Severens and Clark, District Judges) in *Howard v. United States*, 75 Fed. 986, 988-990, suggests the reasonable view of the function and requirements of a mittimus and, also, of a warrant of arrest.

[2] The argument in behalf of the main contention, of unconstitutionality of the statute, 35 Stat. 614, is so plainly untenable as to require no discussion. The first so-called constitutional point is that this statute "invades the police

power of this Territory and therefore is contrary to the Constitution," it being urged that Hawaii was by the Organic Act, 31 Stat. 141, given, to a large degree and so far as consistent with a Territorial status, the enjoyment of the same rights, powers and privileges as are held by the States,—a point which overlooks the fact that Hawaii is a being whose present life is subject to the will of Congress, which has not in this statute relating to opium, enacted subsequent to the enactment of the Organic Act, shown any intent to exempt Hawaii in particular from the operation of a law of peculiar beneficence under conditions in these islands. The array of authorities including *Equitable Life Assurance Society v. Brown,* 187 U. S. 309, and others marshalled in the brief of plaintiff in error in *Wynne v. United States,* 217 U. S. 234, 236, does not justify counsel's idea of Hawaii's status.

That the statute is an unconstitutional exercise of police power, is also urged: that the mere concealment of opium cannot constitute a crime and to make it such is to deprive one of his constitutional liberty. In this argument a dissenting opinion in the case of *Territory v. Ah Lim,* 1 Wash. 156, 9 L. R. A. 895, is referred to. Also, it is contended, that by the opinion in *Re Ah Jow,* 29 Fed. 181, the concealment of the drug is consistent with a valid use, to-wit, for medicinal purposes. Id. 182-183. It is enough to say, so far as the latter decision is concerned, that it passes by a claim of this kind to determine the case on another point. Id. 183. The particular theory of police power here involved has been so fully threshed over by both the Federal and State courts, and our local Territorial Supreme Court,—and settled adversely to this contention,—that no further discussion would be helpful here. The attitude of Congress toward the traffic in, and use of, opium, particularly opium prepared for smoking, reflects "a widespread conviction," "founded upon the experience of human conduct," of the danger of promiscuous possession of this drug,—so wide-

spread a conviction that no court would hesitate to deny its propriety as the basis of police legislation. In the language of Justice Holmes, perhaps the highest authority on this branch of constitutional law, the police power "may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." *Noble State Bank v. Haskell* (Oklahoma Bank Case), 219 U. S. 104, 111. The Federal Supreme Court has often made manifest its reluctance to declare void on this ground legislation otherwise valid. Late expressions of this attiude appear, for instance, in *Central Lumber Co. v. State of South Dakota,* 226 U. S. 157; *Eubank v. City of Richmond,* 226 U. S. 137; *Oklahoma Bank Case,* supra, 111. In this connection, the discussions of Freund on Police Power, secs. 21, 455, 635, 636, are enlightening.

In behalf of the contention that the statute is "indefinite," counsel has contented himself with assertion. Possibly the language of this statute is somewhat difficult to comprehend at first reading, and it might have been better for the sake of directness if, as in the local Hawaiian statute formerly in force, Penal Laws, Hawaii, 1897, sec. 1635, possession had been made the offense (substantive law) instead of evidence thereof (adjective law); but the statute is not indefinite or uncertain.

An argument is also based on the query, "Where is the corpus delicti of the alleged crime as disclosed by this complaint?"—a point not evident from the petition for the writ, or even from the complaint or any other paper before the court. And counsel contends that "if there was any importation into the United States it was into California and not here in Hawaii." Even admitting that the goods in question came here after having first been imported into the United States at another port, I cannot see that the fact would make the alleged act any less a violation of the statute.

[3] It may be noted that the Supreme Court draws the lines closely against the use of the writ of habeas corpus, especially where the objections upon which it is urged might have been raised by motion to quash or otherwise, and even where constitutional questions are raised.    See *Riggins v. United States,* 199 U. S. 547; *Johnson v. Roy,* 227 U. S. 245.    Upon the discharge of the rule to show cause, and the denial of the writ, counsel very strongly insisted that this form of order, this practice, would deprive the petitioner of his right to appeal; that the proper practice, in order to insure such appeal, is to issue the writ and then dismiss it.  I said at once that any such practice struck me as unsound, illogical; that I was not disposed to cut off the right of appeal by following any particular method of procedure, but that my first impression of the proposed practice was decidedly unfavorable,—it struck me as insincere and vain to grant an order which, I was convinced, the petitioner was not, or would not eventually be, entitled to, only to at once set it aside.    See *Soga v. Jarrett,* 20 Haw. 120, 121, citing *Ex parte Terry,* 128 U. S. 289, 301.    But at all events, that an order denying the writ is appealable, see *Ex parte Snow,* 120 U. S. 274, 280-281.    And the language of Rev. Stat. sec. 763, providing for an appeal "from the final decision   .   .   .   upon an application for a writ or upon such writ when issued," leaves no room for doubt of the proposition. See, also, Organic Act, sec. 86, 31 Stat. 141, 158; 35 Stat. 838.

 The argument is also made, that the writ is "a writ of right," and Rev. Stat. sec. 755 makes its issuance imperative except in rare cases.    This must be conceded, but the section carries the proviso, "unless it appears from the peti. tion itself that the party is not entitled thereto;" and, overlooking the fact that the original order made herein followed the form of an order to show cause proposed by counsel himself, the writ does not issue as of course, or at all unless the petition makes this showing of merit.  *In re*

*Haskell,* 52 Fed. 795, 797 (Taft, Circuit Judge) and cases cited; *Re Eaton,* 51 Fed. 804, 806 (McKenna, Circuit Judge); *Ex parte Vallandingham,* 28 Fed. Cas. 874, 920, No. 16,816; *In re Boardman* (Durant case), 169 U. S. 39, 43; Re King, 51 Fed. 434, 435; *Ex parte Terry,* 128 U. S. 289, 301. "If it is apparent upon the petition that the writ if issued ought not, on principles of law and justice, to result in the immediate discharge of the accused from custody, the court is not bound to award it as soon as the application is made." *Ex parte Royall,* 117 U. S. 241, 250. Such has been the rule since the time of Chief Justice Marshall. *Ex parte Watkins,* 3 Peters 193, 201. So here, it was, to me, apparent that for want of the slightest showing of the party's right to his liberty, the writ ought not to issue. His own showing was inadequate, as to the insufficiency of the warrants of arrest and of commitment; and the validity of his constitutional, and other, points was not apparent, but they consisted in mere assertion of conclusions of law. *Re Cuddy,* 131 U. S. 280, 286; *Craemer v. Washington,* 168 U. S. 124, 128-129; *Whitten v. Tomlinson,* 160 U. S. 231, 242; *Ex parte Milligan,* 4 Wall. 2, 110-111. See *Portland Ry. &c. Co. v. City of Portland,* 200 Fed. 890, 892.

Finally, counsel now urges that my refusal to grant the writ, would leave the petitioner in an unfortunate and unjust position, because of the fact that the rules of the Circuit Court of Appeals for this ninth circuit, provide that, in such a case, "the custody of the prisoner shall not be disturbed," and that "pending an appeal from the final decision of any court or judge discharging the writ *after it has been issued,*" the prisoner may be "enlarged upon recognizance." Rule 33, May 22, 1912, which is the same as Supreme Court rule 34, Dec. 22, 1911. I take it, however, that this rule has to do only with procedure, and that, even conceding the power of any appellate court to say what the substance of a lower court's order shall be in a given case, this rule was not intended as a diplomatic means of any

such supervision in the matter of petitions for writs of habeas corpus. If the intent had been such as counsel's argument would imply, the higher courts would most certainly not have expressed their object with such indirection. Considerations of policy and of justice argue, rather, for an intent to discourage appeals in cases of so little merit, apparent to the court below, that the lower court "declined to grant the writ." Rule 33, supra, subdiv. 1. While, of course, the very fact that the rules of the appellate courts have undertaken to distinguish between such cases and cases in which the court discharged the writ after issuance, Id., subdiv. 2, indicates clearly enough that the higher courts contemplated just such plainly unmeritorious cases as I deem this present petition to disclose.

The suggestion having been made that counsel realized his tactical mistake in presenting to the court for issuance an order to show cause rather than an order allowing the writ, and might, therefore, bring another petition, it will be well to point out for our guidance in future, that the issuance of a preliminary rule *nisi* is the common practice of the Supreme Court, except possibly, where some exigency requires the immediate issuance of the writ: *Ex parte Yarbrough,* 110 U. S. 651, 653; and has been since an early day: *Ex parte Watkins,* 7 Peters, 568, 570-571; *Ex parte Milburn,* 9 Peters, 704, note (Marshall, C. J.),—though, it is true, the statute now embodied in Rev. Stat., sec. 755, had not then, nor until 1867, been enacted. And see 9 Enc. Pl. & Pr. 1024-1025, and notes. Chief Justice Shaw regarded this as "the ordinary course" in habeas corpus proceedings. *Sim's Case,* 7 Cush. (Mass.) 285, 291-292. See *Soga v. Jarrett,* 3 U. S. Dist. Ct. Haw. 502, 504, 505; *In re Wong On,* ante, p. 59; *In re Tsuru Tomimatsu,* ante, p. 97.

The final order will stand as made: the order to show cause is discharged and the petition for the writ denied.