## THE ALTA.

### (Circuit Court of Appeals, Ninth Circuit. February 6, 1905.)

### No. 1,102.

1. COMMERCE—TONNAGE DUTIES—VESSELS SUBJECT TO DUTY.

A foreign-built vessel, owned entirely by a citizen of the United States, and entering a port of the United States from Manila, P. I., does not enter from a "foreign port or place," and is therefore not subject to tonnage duty under Rev. St. § 4219 [U. S. Comp. St. 1901, p. 2848], as amended by Acts June 26, 1884, c. 121, 23 Stat. 57, and June 19, 1886, c. 421, 24 Stat. 81 [U. S. Comp. St. 1901, p. 2850], nor is she subject to such duty under Act March 8, 1902, c. 140, 32 Stat. 54 [U. S. Comp. St. Supp. 1903, p. 349], extending such duties to "foreign" vessels entering from the Philippine Archipelago, since, while not "a vessel of the United States," because not entitled to registry, she is an American, and not a foreign, vessel, by virtue of the citizenship of her owner.

2. SAME—LIGHT MONEY—PROOF TO ENTITLE VESSEL TO EXEMPTION.

The fact that the affidavit and proof showing the American ownership of an unregistered vessel entered at a port of the United States required by Rev. St. § 4226 [U. S. Comp. St. 1901, p. 2855], to exempt such vessel from the payment of light money under the preceding section was not made by the owner or master at the time of the entry does not deprive the vessel of the right to the exemption where such proof in due form was made to the collector within a short time thereafter.

Appeal from the District Court of the United States for the Northern Division of the District of Washington.

In the libel of information filed by the appellant in the court below it is alleged that the barkentine in question "is a foreign vessel, of foreign build and manufacture, of 1289 tons net, which your informant believes, having been informed, that she was made and manufactured in Glasgow, Scotland," and that she entered the port of Port Gamble, Wash., on the 17th day of April, 1903, having come from the port of Manila, Philippine Islands, by the way of British Columbia, and was, on the 30th day of April, seized by the collector of customs of the district of Puget Sound for failure to pay the tonnage dues alleged to have been imposed by statute, and for failure to pay the light money there provided for; it being also alleged that the vessel is not, by reason of any of the exceptions contained in the laws, treaties, or proclamations of the United States, exempt from the payment of such tonnage duties and light money, and the captain thereof failing, upon entry of the vessel, or at any other time, to take or make the oath or affidavit required by section 4226 of the Revised Statutes [U. S. Comp. St. 1901, p. 2855]. The libel further alleges that by reason of the facts stated the vessel became forfeited to the United States, and that she, her boats, tackle, apparel, and furniture, and her owners, became liable to the government in the sum of $644.50 tonnage dues under section 4219 of the Revised Statutes [U. S. Comp. St. 1901, p. 2848], and in the further sum of $77.34 by virtue of the act of June 19, 1886, and in the further sum of $644.50 by virtue of section 4226 of the Revised Statutes, no part of which has been paid, and all of which the vessel, her captain, owners, and agents, refused to pay. In consequence of which the government sought the usual decree of condemnation and sale. The libel was answered by D. H. Ward, the sole owner of the barkentine, who is a citizen of the United States, residing at Manila. In his answer the claimant admitted "that the defendant, the barkentine Alta, is a foreign vessel, of foreign build and manufacture, of 1,289 tons net, and that she was made and manufactured in Glasgow, Scotland"; but the claimant in his answer further alleges:

"(1) That said barkentine Alta was built in Glasgow, Scotland, in the year 1900, and prior to and on the 7th day of February, 1903, was owned by the Philippine Shipping Company, a corporation organized and existing under and

136 F.—33

by virtue of the laws of the United States relating to the Philippine Archipelago, and on the 7th day of February, 1903, the said Philippine Shipping Company duly sold, transferred, and set over unto D. H. Ward, this claimant, the whole of the barkentine Alta, her tackle, apparel, and furniture, and thereupon executed and delivered a bill of sale of the said barkentine Alta, her tackle, apparel, and furniture, to this claimant, which said bill of sale was duly and properly executed.

"(2) That at said time said D. H. Ward was and now is a native-born citizen of the United States, and residing at Manila, Philippine Islands.

"(3) That thereupon, on February 10, 1903, the said barkentine Alta then and there being an unregistered vessel, owned by a citizen of the United States, to wit, this claimant, said claimant applied to the collector of customs of the United States for the Philippine Archipelago for the issuance to him of a certificate of ownership and a certificate of protection under the laws of the United States, and thereupon the said claimant delivered to the collector of customs of the United States for the Philippine Archipelago the bill of sale hereinbefore described; said bill of sale has been ever since and now is retained by said collector of customs; and thereupon and at said time this said claimant made and delivered to the said collector of customs an affidavit in the words and figures following, to wit:

" 'Affidavit.

" 'City of Manila, Philippine Islands—ss.    Sail Alta.

" 'Personally appeared before me the undersigned, one D. H. Ward, who, being duly sworn, deposes and says:    That he is a citizen of the United States of America, and that he acquired his citizenship in the following manner: by birth in the United States in the town of Columbia, state of California, in the year of 1858, and that he is a resident of the Philippine Islands.
" 'D. H. Ward.

" 'Sworn to and subscribed before me this 12th day of Febry, 1903.
" '[Official Seal.]                                    Chas. Steinhiller.
" 'Empowered to administer oaths under the provisions of Sec. 21, Act No. 355.'

"(4) That thereupon, in pursuance of the laws of the United States, said collector of customs of the United States for the Philippine Archipelago made and issued under his official seal to said D. H. Ward, as the owner of said barkentine Alta, the following certificate of ownership and the following certificate of protection:

" '1st Cl. No. 430.                                                    Original.
" 'Certificate of Ownership.

" 'I, W. Morgan Shuster, collector of customs for the Philippine Archipelago, do hereby certify that the within bill of sale, bearing date of 7 day of Febry., 1903, of the barkentine vessel called the Alta, 1,385.07 gross tons, 1,289.38 net tons, sold and transferred by the Philipp. Shippg. Co. to D. H. Ward of Manila, P. I., has been proved satisfactorily to me to have been duly executed, and I further certify that D. H. Ward herein mentioned as the purchaser of said vessel is a citizen of the United States, and a resident of the Philippine Islands.                              W. Morgan Shuster,
" 'Collector of Customs for the Philippine Archipelago.
" '[Official Seal.]                                    By H. B. McCoy,
" 'Deputy Collector of Customs for the Philippine Archipelago.
" 'Collector of Customs for the Philippine Archipelago.
" 'Port of Manila, P. I.
" 'Date Febry. 10, 1903.
" '[50 ct. stamp attached and canceled.]'

" 'Certificate No. 1,858.                                          1st Cl. No. 430.
" 'Port of Manila, Philippine Islands.
" 'The United States of America,
" 'Philippine Islands.
" 'Certificate of Protection.

" 'In pursuance of executive order, approved July 3, 1899, by the President of the United States, H. Ward, residing at Manila, Philippine Islands, ceded

to the United States by Spain, on April 11, 1899, having sworn that he is a citizen of the United States and having sworn that he is the owner of the vessel called the Alta, and that said vessel was built in the year 1900, at Glasgow, Scotland, and that said vessel is a barkentine of 1,385.07 gross tons and 1,289.38 net tons, and that said vessel has one deck and four masts, and that her length is 69.06 ms., her breadth 13.45 ms., and her depth 6.10 ms., and that said vessel is engaged in legitimate trade. Therefore, said vessel is by this certificate entitled to the protection and flag of the United States.

" 'Given under my hand at the Port of Manila, Philippine Islands, this 10th day of Febry. in the year one thousand nine hundred and three.

" '[Official Seal.]                [Signed]   W. Morgan Shuster,
         " 'Collector of Customs for the Philippine Archipelago.

" 'A true copy from the original.           W. Morgan Schuster.
         " 'Collector of Customs for the Philippine Archipelago.
                            " 'By Letto P. Mobley,
        " 'Chief Consular and Statistical Division.

" '[50 ct. stamp attached and canceled.]'

—Which said certificate of ownership and said certificate of protection and each of them have been ever since retained in the possession of the said claimant and the master of said vessel, though the originals thereof were at the time of the filing of the affidavit with the master of said vessel hereinafter mentioned with the collector of customs at the port of Port Townsend, duly submitted to said collector for inspection.

"(5) That on or about the 20th day of February, 1903, said barkentine Alta cleared from the port of Manila, Philippine Islands, in ballast, and without carrying any cargo whatsoever, for a voyage to Port Townsend, Wash., being then and there owned by this claimant, as aforesaid, and carrying the said certificate of ownership and the said certificate of protection, as aforesaid, and on or about the 30th day of April, 1903, arrived at Port Townsend, the district of Washington aforesaid, and was thereupon seized by the collector of customs of the United States of the district of Puget Sound for the non-payment of tonnage dues and light money as is set out in the information of libel herein.

"(6) That on the arrival of said vessel at Port Townsend, and before her seizure as set out in said information of libel, the master of said vessel tendered to said collector of customs the sum of $77.34 in payment of tonnage taxes, under the act of June 19, 1886.

"(7) That upon the seizure of said vessel for the causes set forth in said libel, and said W. Thonagel, the master thereof upon being advised of the cause of said seizure, duly filed with the collector of customs for the district of Puget Sound the affidavit required by section 4226 of the Revised Statutes, and in the words and figures following, to wit:

" 'State of Washington, District of Puget Sound, County of King—ss.

" 'W. Thonagel, being first duly sworn, on oath deposes and says: That he is, and for thirty years last past has been, a citizen of the United States, and that he is, and has been ever since the launching thereof, master of the barkentine Alta, and that during all the times herein mentioned all of the officers of said vessel have been and are now citizens of the United States. That the said barkentine Alta was built in the year 1900, at Glasgow, Scotland, and that on the 7th day of February, 1903, the whole of said barkentine Alta was sold and transferred by the Philippine Shipping Company to D. H. Ward of Manila, Philippine Islands. That the said barkentine is of 1,385.07 gross tons and 1,289.38 net tons measurement, and has one deck and four masts. That the said D. H. Ward is a native-born citizen of the United States, having been born in the town of Columbia, state of California, in the year 1858, and is now temporarily a resident of Manila, in the Philippine Islands. That on the 10th day of February, 1903, there was issued to the said D. H. Ward, the sole owner of said vessel, a certificate of protection, signed and under the seal of the collector of customs for the Philippine Archipelago, at Manila, a copy of which is hereto attached and marked "Exhibit A." That on the 10th day of February, 1903, there was issued to the

said D. H. Ward a certificate of ownership under the hand and seal of the said collector of customs, a copy of which is hereto attached, and marked "Exhibit B"; and there is hereto attached, marked "Exhibit C," a copy of the affidavit of the said D. H. Ward before the collector of customs at Manila, P. I., as to the citizenship of the said D. H. Ward. That on or about the 27th day of February, 1903, the said barkentine Alta, under the command of this affiant, cleared from the port of Manila, P. I., for the port of Port Townsend, in the district aforesaid, where she arrived on the 30th day of April, 1903. That soon after her arrival she was seized by the collector of customs for the district of Puget Sound for her failure to pay a duty of fifty cents per ton as light money under the provisions of section 4225, Revised Statutes of the United States. That the said D. H. Ward, the owner of said vessel, is now a resident of the said port of Manila, and is not within the district of Puget Sound; and that this affiant, as the master of said barkentine, makes this affidavit under the provisions of section 4226 of the Revised Statutes of the United States, for the purpose of relieving said vessel from the said duty of fifty cents per ton as light money. That the said barkentine Alta is an unregistered vessel, owned solely by the said D. H. Ward, a citizen of the United States, and is carrying the said certificate of protection issued as aforesaid from the custom house of the United States at Manila, P. I., and the said certificate of ownership issued from said custom house, proving the said vessel to be American property, and that the said certificate of protection and certificate of ownership possessed by said barkentine Alta contain the name of the said D. H. Ward, who is the sole owner of the said barkentine Alta. That no part of the said barkentine Alta has been sold or transferred since the date of such certificate of ownership and certificate of protection, and that no foreign subject or citizen has, to the best of the knowledge and belief of this affiant, any share, by way of trust, confidence, or otherwise, in such vessel, or any part thereof. That this affiant herewith submits to the said collector of customs of the district of Puget Sound the original of the documents, copies of which are hereto attached.          W. Thonagel.

" 'Subscribed and sworn to before me this 14th day of May, A. D. 1903.
" '[Notarial Seal.]                                            H. J. Ramsey,
" 'Notary Public in and for the State of Washington, Residing at Seattle.' "

The claimant, in his answer, admits the seizure of the vessel by the collector of customs, as alleged in the libel, for its failure to pay the moneys alleged to be due to the government, and admits that the vessel entered the port of Port Townsend from the port of Manila, and that she came by way of Victoria, British Columbia, but alleges that she did not enter at or clear from that port, and alleges that it is not true that the vessel is not, by reason of the exceptions contained in the laws, treaties, and proclamations of the United States, exempt from the payment of the dues and light money alleged to be due to the government, and that it is not true that the captain of the vessel failed to make the oath or affidavit required by section 4226 of the Revised Statutes.

The answer admits that there became due and owing to the United States the sum of $77.34 under and by virtue of the act of Congress of June 19, 1886, c. 421, 24 Stat. 81 [U. S. Comp. St. 1901, p. 2850], which sum it is averred "has been heretofore tendered, and which said sum was before the filing of said information of libel and upon her (the vessel's) entry at the port of Port Townsend duly tendered to the collector of customs by the master of said vessel," but denies that either of the other sums claimed ever became due or owing to the government.

"Exceptions to this answer were filed by the United States in the court below, and, being by that court overruled, the government elected to stand upon the exceptions, and submitted to judgment against it, and has brought the case here for review."

Edward E. Cushman, Asst. U. S. Atty.
W. T. Dovell, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Section 4219 of the Revised Statutes [U. S. Comp. St. 1901, p. 2848] provides as follows:

"Sec. 4219. (Upon vessels which shall be entered at any custom-house in the United States, from any foreign port or place, there shall be paid the respective duties following: On vessels of the United States, thirty cents a ton; on vessels built within the United States, but belonging wholly or in part to subjects of foreign powers, sixty cents per ton; on foreign vessels entered in the United States from any foreign port to and with which vessels of the United States are not ordinarily permitted to enter and trade, two dollars and thirty cents per ton; on other vessels, thirty cents per ton: provided, that the President of the United States shall be satisfied that the discriminating or countervailing duties of any foreign nation to which such vessels belong, so far as they operate to the disadvantage of the United States, have been abolished; otherwise, eighty cents per ton: and provided, that nothing in this section shall impair any rights or privileges which have been or may be acquired by any foreign nation, under the laws and treaties of the United States, relative to the duty of tonnage on vessels.) (Upon vessels which shall be entered in the United States from any foreign port or place there shall be paid duties as follows: On vessels built within the United States but belonging wholly or in part to subjects of foreign powers, at the rate of thirty cents per ton; on other vessels not of the United States, at the rate of fifty cents per ton. Upon every vessel not of the United States, which shall be entered in one district from another district, having on board goods, wares, or merchandise taken in one district to be delivered in another district, duties shall be paid at the rate of fifty cents per ton. Nothing in this section shall be deemed in any wise to impair any rights or privileges which have been or may be acquired by any foreign nation under the laws and treaties of the United States relative to the duty of tonnage on vessels. On all foreign vessels which shall be entered in the United States from any foreign port or place, to and with which vessels of the United States are not ordinarily permitted to enter and trade, there shall be paid a duty at the rate of two dollars per ton; and none of the duties on tonnage above mentioned shall be levied on the vessels of any foreign nation if the President of the United States shall be satisfied that the discriminating or countervailing duties of such foreign nations, so far as they operate to the disadvantage of the United States, have been abolished. In addition to the tonnage-duty above imposed, there shall be paid a tax, at the rate of thirty cents per ton, on vessels which shall be entered at any custom-house within the United States from any foreign port or place; and any rights or privileges acquired by any foreign nation under the laws and treaties of the United States relative to the duty of tonnage on vessels shall not be impaired; and any vessel any officer of which shall not be a citizen of the United States shall pay a tax of fifty cents per ton.)"

The above section was amended by section 14 of the act of Congress of June 26, 1884, c. 121, 23 Stat. 57 [U. S. Comp. St. 1901, p. 2850], as follows:

"Sec. 14. That in lieu of the tax on tonnage of thirty cents per ton per annum heretofore imposed by law, a duty of three cents per ton, not to exceed in the aggregate fifteen cents per ton in any one year, is hereby imposed at each entry on all vessels which shall be entered in any port of the United States from any foreign port or place in North America, Central America, the West India Islands, the Bahama Islands, the Bermuda Islands, or the Sandwich Islands, or Newfoundland; and a duty of six cents per ton, not to exceed thirty cents per ton per annum, is hereby imposed at each entry upon all vessels which shall be entered in the United States from any other foreign ports: provided, that the President of the United States shall suspend the collection of so much of the duty herein imposed, on vessels entered from any port in the Dominion of Canada, Newfoundland, the Bahama Islands,

the Bermuda Islands, the West India Islands, Mexico and Central America down to and including Aspinwall and Panama, as may be in excess of the tonnage and light house dues, or other equivalent tax or taxes, imposed on American vessels by the government of the foreign country in which such port is situated and shall upon the passage of this act, and from time to time thereafter as often as it may become necessary by reason of changes in the laws of the foreign countries above mentioned, indicate by proclamation the ports to which such suspension shall apply, and the rate or rates of tonnage duty if any to be collected under such suspension. And provided further, that all vessels which shall have paid the tonnage tax imposed by section forty-two hundred and nineteen of the Revised Statutes for the current year, shall not be liable to the tax herein levied until the expiration of the certificate of last payment of the said tax. And sections forty-two hundred and twenty-three and forty-two hundred and twenty-four and so much of section forty-two hundred and nineteen of the Revised Statutes as conflicts with this section, are hereby repealed."

The last-mentioned section was so amended by section 11 of the act of June 19, 1886, c. 421, 24 Stat. 81 [U. S. Comp. St. 1901, p. 2850], as to read as follows:

"Sec. 11. That section fourteen of 'An act to remove certain burdens on the American merchant marine and encourage the American foreign carrying-trade, and for other purposes,' approved June twenty-sixth, eighteen hundred and eighty-four, be amended so as to read as follows:

"'Sec. 14. That in lieu of the tax on tonnage of thirty cents per ton per annum imposed prior to July first, eighteen hundred and eighty-four, a duty of three cents per ton, not to exceed in the aggregate fifteen cents per ton in any one year, is hereby imposed at each entry on all vessels which shall be entered in any port of the United States from any foreign port or place in North America, Central America, the West India Islands, the Bahama Islands, the Bermuda Islands, or the coast of South America bordering on the Caribbean Sea, or the Sandwich Islands, or Newfoundland; and a duty of six cents per ton, not to exceed thirty cents per ton per annum, is hereby imposed at each entry upon all vessels which shall be entered in the United States from any other foreign ports, not, however, to include vessels in distress or not engaged in trade: provided, that the President of the United States shall suspend the collection of so much of the duty herein imposed, on vessels entered from any foreign port, as may be in excess of the tonnage and lighthouse dues, or any other equivalent tax or taxes, imposed in said port on American vessels by the government of the foreign country in which such port is situated, and shall, upon the passage of this act, and from time to time thereafter as often as it may become necessary by reason of changes in the laws of the foreign countries above mentioned, indicate by proclamation the ports to which such suspension shall apply, and the rate or rates of tonnage-duty, if any, to be collected under such suspension: provided, further, that such proclamation shall exclude from the benefits of the suspension herein authorized the vessels of any foreign country in whose ports the fees or dues of any kind or nature imposed on vessels of the United States, or the import or export duties on their cargoes, are in excess of the fees, dues, or duties imposed on the vessels of the country in which such port is situated, or on the cargoes of such vessels; and sections forty-two hundred and twenty-three and forty-two hundred and twenty-four, and so much of section forty-two hundred and nineteen of the Revised Statutes as conflicts with this section, are hereby repealed.'"

By section 3 of the act of March 8, 1902, c. 140, 32 Stat. 54 [U. S. Comp. St. Supp. 1903, p. 349], Congress enacted:

"That on and after the passage of this act the same tonnage taxes shall be levied, collected, and paid upon all foreign vessels entering into the United States from the Philippine Archipelago which are required by law to be levied, collected, and paid upon vessels entering into the United States from foreign countries. * * *"

It is, we think, quite manifest from the foregoing statutory provisions, that the tonnage tax there provided for is only to be levied on foreign vessels, or vessels coming from some foreign port or place. That the barkentine in question is not "a vessel of the United States" within the meaning of its statutes, is clear, for section 4131 of the Revised Statutes [U. S. Comp. St. 1901, p. 2803] in terms declares that:

"Vessels registered pursuant to law, and no others, except such as shall be duly qualified, according to law, for carrying on the coasting trade and fisheries, or one of them, shall be deemed vessels of the United States, and entitled to the benefits and privileges appertaining to such vessels; but they shall not enjoy the same longer than they shall continue to be wholly owned by citizens and to be commanded by a citizen of the United States. And officers of vessels of the United States shall in all cases be citizens of the United States."

"A vessel of the United States" therefore means more than a vessel whose nationality is American. It means such a vessel as is defined in section 4131 of the Revised Statutes, and no other. According to the averments of the libel itself, the barkentine Alta was not entitled to register here, for section 4132 of the Revised Statutes [U. S. Comp. St. 1901, p. 2805], provides:

"Vessels built within the United States, and belonging wholly to citizens thereof, and vessels which may be captured in war by citizens of the United States, and lawfully condemned as prize, or which may be adjudged to be forfeited for a breach of the laws of the United States, being wholly owned by citizens, and no others, may be registered as directed in this title."

But while the Alta was not "a vessel of the United States," as spoken of and defined in its statutes, she was an American vessel because of the nationality of her owner. The Merritt, 17 Wall. 585, 21 L. Ed. 682; United States v. Jenkins, 26 Fed. Cas. 603; The San Jose Indiano, 2 Gall. 268, Fed. Cas. No. 12,322; 25 Am. & Eng. Encyc. of Law (2d Ed.) pp. 863, 864. Having come from Manila, which is not a "foreign port or place" (The Diamond Rings Case, 183 U. S. 176, 22 Sup. Ct. 59, 46 L. Ed. 138), the Alta was not subject to the tonnage tax prescribed by section 4219 of the Revised Statutes, as amended by the acts of 1884 and 1886, and, not being a foreign vessel, she was not subject to the tax prescribed by section 3 of the act of March 8, 1902, above quoted. Even if she could be regarded as a British vessel, by reason of the fact that she was built in Scotland, she would be exempt from the tonnage tax here claimed by the government because of that provision of the treaty between the United States and Great Britain of July 3, 1815, providing that:

"No higher or other duties or charges shall be imposed in any of the ports of the United States on British vessels than those paid in the same ports by vessels of the United States; nor in the ports of any of His Britannic Majesty's territories in Europe, on the vessels of the United States, than shall be payable in the same ports on British vessels."

The contention that the government was entitled to light money under the provisions of section 4225 of the Revised Statutes [U. S. Comp. St. 1901, p. 2855] is not, in our opinion, well founded, in view of the facts shown by the pleadings. That section declares:

"A duty of fifty cents per ton, to be denominated 'light money,' shall be levied and collected on all vessels not of the United States, which may enter

the ports of the United States. Such light-money shall be levied and collected in the same manner and under the same regulations as the tonnage duties."

But the next section (Rev. St. § 4226 [U. S. Comp. St. 1901, p. 2855]) provides that:

"The preceding section shall not be deemed to operate upon unregistered vessels, owned by citizens of the United States, and carrying a sea-letter, or other regular document, issued from a custom-house of the United States, proving the vessel to be American property."

It is true that the last-mentioned section proceeds to declare that:

"Upon the entry of every such vessel from any foreign port, if the same shall be at the port at which the owner or any of the part owners reside, such owner or part owners shall make oath that the sea-letter or other regular document possessed by such vessel contains the name or names of all the persons who are then the owners of the vessel; or if any part of such vessel has been sold or transferred since the date of such sea-letter or document, that such is the case, and that no foreign subject or citizen has, to the best of his knowledge and belief, any share, by way of trust, confidence, or otherwise, in such vessel. If the owner or any part owner does not reside at the port or place at which such vessel shall enter, then the master shall make oath to the like effect. If the owner or part owner, where there is one, or the master, where there is no owner, shall refuse to so swear, such vessel shall not be entitled to the privileges granted by this section."

It is true that the proof of the facts exempting the Alta from light money was not made by her owner or master at the time of her entry at Port Gamble, but such proof was made to the collector of that port within a few days after such entry, and was shown to the court below; which, in our judgment is sufficient. As said by Judge Benedict in the case of The Miranda (D. C.) 47 Fed. 815, the intent of section 4226 of the Revised Statutes is that the fact that the vessel is American property shall exempt her from liability to pay light money; and in reply to a similar objection made in that case Judge Benedict further said:

"The law is complied with if the fact be shown to the collector by any competent evidence. Moreover, the fact has been duly proved before the court in this case, and is not denied. How can this court be asked to condemn this vessel to pay light money, in face of the fact proved that she is an unregistered vessel, owned by a citizen of the United States, when the declaration of section 4226 is that such a vessel so owned is not liable to pay light money?"

That the government was entitled to the 6 per cent. tax imposed by the act of June 19, 1886, amounting to $77.34, is conceded by the appellee; but, as the same concession was made in the appellee's answer, the modification of the judgment which must be made should be without costs to the appellant.

The judgment will be so modified as to award the government the $77.34, without costs, and, as so modified, it will stand affirmed.