## THE ALTA.

### UNITED STATES v. WARD.

(Circuit Court of Appeals, Ninth Circuit. October 1, 1906.)

No. 1,281.

SHIPPING—TONNAGE DUTIES—NATIONALITY OF VESSEL.

A vessel not registered in the United States is a vessel "not of the United States," within the meaning of Rev. St. § 4219 [U. S. Comp. St. 1901, p. 2848], although owned by a citizen of the United States, and on her entry from a foreign port is subject to tonnage duty at the rate of 50 cents per ton thereunder.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington.

On the 8th day of September, 1904, the barkentine Alta, a vessel of 1,289 tons net, belonging to D. H. Ward, a citizen of the United States, arrived at the port of Port Townsend, Wash., in ballast from the foreign port of East London, Cape Colony, South Africa. The vessel was built in Glasgow, Scotland, and had no American register. She was seized by the collector of customs for the collection district of Puget Sound for failure to pay the tonnage duties as required by section 4219 of the Revised Statutes [U. S. Comp. St. 1901, p. 2848], and for failure to pay light money as required by section 4225 of the Revised Statutes [U. S. Comp. St. 1901, p. 2855]. To the libel of information the owner as claimant answered that he was the sole owner of the barkentine and that he was a citizen of the United States, residing in Manila, Philippine Islands. The answer admitted that the vessel was liable for the payment of $77.34 under Act June 19, 1886, c. 421, 24 Stat. 81 [U. S. Comp. St. 1901, p. 2850], and alleged that the owner had tendered said amount to the collector of customs before the seizure; that he had applied to the collector of customs of the United States for the Philippine Archipelago for an issuance to him of a certificate of ownership and a certificate of protection under the laws of the United States, and had delivered to said collector the bill of sale whereby he had acquired the ownership of said vessel; that said collector issued to him a certificate of ownership and a certificate of protection; and that at the time of the arrival of said vessel at Port Townsend it was his intention to take a cargo of lumber from Port Gamble, Wash., to Cape Colony, South Africa. The answer also alleged that all discriminating or countervailing duties of Great Britain and of Cape Colony, so far as they might operate to the disadvantage of the United States, had long since been abolished under the laws of Great Britain and of Cape Colony; that American vessels entering ports of Cape Colony from the United States or any territory thereof were entitled to enter without paying any duties or taxes on tonnage; and that no tonnage taxes or duties in excess of the tonnage duty of six cents per ton was collectible within any collection district of the United States upon any vessel entering from any port of Cape Colony or Great Britain. The libelant filed an exception to the answer. The cause came on for hearing upon the libel, the answer, and the exceptions, and the District Court held that the vessel was subject to the payment of $77.34, but overruled the exceptions to the other portions of the answer and dismissed the libel. From the decree thereupon entered this appeal is taken.

Jesse A. Frye and Alfred E. Gardner, for appellant.

Hughes, McMicken, Dovell & Ramsey, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

In the case of The Alta, 136 Fed. 513, 69 C. C. A. 289, we had under consideration the question of the liability of the Alta for tonnage duties on her entry into a port of the United States from the port of Manila, Philippine Islands. We held that she was not subject to tonnage duties under Revised Statutes, § 4219, as amended [U. S. Comp. St. 1901, p. 2850], since she did not enter from a foreign port or place, and that she was not subject to such duty under Act March 8, 1902, c. 140, 32 Stat. 54 [U. S. Comp. St. Supp. 1905, p. 388], extending such duties to foreign vessels entering from the Philippine Archipelago, since, while she was not a vessel of the United States because not entitled to a registry, she was an American vessel by virtue of the citizenship of her owner. In the case at bar the vessel comes to a port of the United States from a foreign port, and a new question is presented.

Section 4219 of the Revised Statutes provides as follows:

"Upon vessels which shall be entered in the United States from any foreign port or place there shall be paid duties as follows: On vessels built within the United States but belonging wholly or in part to subjects of foreign powers, at the rate of thirty cents per ton; on other vessels not of the United States, at the rate of fifty cents per ton. Upon every vessel not of the United States, which shall be entered in one district from another district, having on board goods, wares or merchandise taken in one district to be delivered in another district, duties shall be paid at the rate of fifty cents per ton. Nothing in this section shall be deemed in any wise to impair any rights or privileges which have been or may be acquired by any foreign nation under the laws and treaties of the United States relative to the duty of tonnage on vessels. On all foreign vessels which shall be entered in the United States from any foreign port or place, to and with which vessels of the United States are not ordinarily permitted to enter and trade, there shall be paid a duty at the rate of two dollars per ton; and none of the duties on tonnage above mentioned shall be levied on the vessels of any foreign nation if the President of the United States shall be satisfied that the discriminating or countervailing duties of such foreign nations, so far as they operate to the disadvantage of the United States, have been abolished. In addition to the tonnage-duty above imposed, there shall be paid a tax, at the rate of thirty cents per ton, on vessels which shall be entered at any custom-house within the United States from any foreign port or place; and any rights or privileges acquired by any foreign nation under the laws and treaties of the United States relative to the duty of tonnage on vessels shall not be impaired; and any vessel, any officer of which shall not be a citizen of the United States shall pay a tax of fifty cents per ton."

This section imposes duties on vessels built within the United States, but belonging wholly or in part to subjects of foreign powers, at the rate of 30 cents per ton; on other vessels not of the United States at the rate of 50 cents per ton. The question is whether the barkentine Alta is a vessel "not of the United States," within the meaning of this statute. Section 4131 [U. S. Comp. St. 1901, p. 2803] provides:

"Vessels registered pursuant to law and no others except such as shall be duly qualified according to law for carrying on the coasting trade and fisheries or one of them shall be deemed vessels of the United States and entitled to the benefits and privileges appertaining to such vessels."

Here is a distinct statutory provision appearing at the head of the title which deals with the regulation of commerce and navigation. Its evident purpose is to define "vessels of the United States," and to de-

clare the meaning of those words wherever they shall be used throughout the title. The appellees earnestly contend that the Alta does not fall within the class designated by the term "other vessels not of the United States," and counsel refer to various provisions of the statute, from the terms of which they argue, first, that a vessel is of the United States whenever it is documented, enrolled, licensed, or recorded under any law of the United States, as, for instance, a vessel licensed to engage in the coast trade, a vessel built in the United States, but owned by foreign subjects, and recorded under section 4180, a licensed yacht, a vessel protected under a sea letter or certificate issued under section 4190 [U. S. Comp. St. 1901, p. 2837] to certain vessels owned by citizens of the United States, and they refer to section 4135 [U. S. Comp. St. 1901, p. 2807], which makes use of the expression "recorded as an American vessel of the United States," which they contend shows the intention of Congress toward any American vessel recorded as such under any law of Congress.

They contend, further, that many of the enactments of Congress in which the term "vessel of the United States" is used manifestly were not intended to refer alone to vessels registered under section 4131, but were intended to include vessels whose nationality is American. Thus it is said that section 1718, referring to a vessel of the United States, applies to all vessels flying the American flag, and that certain regulations found in sections 4233, 4234, and 4238 [U. S. Comp. St. 1901. pp. 2893, 2900, 2903], in regard to collisions at sea and duties of the masters of vessels of the United States, were intended to apply to all vessels whose nationality is American, and that the protection afforded by section 4293 [U. S. Comp. St. 1901, p. 2950] to merchant vessels of the United States was intended to be extended to all vessels flying as of right the American flag, whether registered or not. Other sections are cited from which the same argument is deduced. We find in the consideration of these various statutes no ground for disregarding the plain language of section 4219, and it is not necessary to speculate concerning the proper construction of the various sections so cited. We have to deal only with the question: What is the meaning of the term "vessels of the United States," as used in section 4219? That meaning is so plainly declared in a statute expressly made for our guidance as to leave no room for construction. In White's Bank v. Smith, 7 Wall. 646, 19 L. Ed. 211, the court said:

"Ships or vessels of the United States are the creations of the legislation of Congress. None can be denominated such or be entitled to the benefits or privileges thereof, except those registered or enrolled. * * * Ships or vessels not brought within these provisions of the acts of Congress, and not entitled to the benefits and privileges thereunto belonging, are of no more value as American vessels than the wood and iron out of which they are constructed. Their substantial, if not entire, value consists in their right to the character of national vessels, and to have the protection of the national flag floating at their mast's head.

In The Merritt, 17 Wall. 582, 21 L. Ed. 682, the court had under consideration the status of a vessel, the property of citizens of the United States, but foreign built. The court said:

"That she was owned by citizens of the United States did not make her a vessel of the United States. By the statute of 1792 only ships which have been registered in the manner therein prescribed shall be denominated or deemed vessels of the United States are entitled to the benefits or privileges appertaining to such ships."

In The Conqueror, 166 U. S. 110–119, 17 Sup. Ct. 510, 513, 41 L. Ed. 937, Mr. Justice Brown said:

"The privilege, however, of owning foreign vessels is usually of comparatively little value, since in order to carry on a foreign trade, the coasting trade, or the fisheries they must be entitled either to registry, or to enrolment and license, a privilege, as above stated, not granted to foreign built vessels, though owned by American citizens."

Counsel for the appellees contend that this construction of the statute results in an unconstitutional discrimination against American citizens, and presents the anomaly that two English built ships may sail from the same foreign port to an American port, the one owned by a British subject, the other owned by an American citizen, and the first will pay no duty, while the second must pay 50 cents per ton. This anomaly furnishes no ground for disregarding the statute. The anomaly has its basis in the policy of the legislation of Congress, to which body is intrusted the regulation of the whole subject-matter here involved. Nor can we see that Congress in so enacting has not acted strictly within its power.

The appellant asserts a claim to light money under section 4225, Rev. St. The record shows that the proper showing to absolve the vessel from that payment was made soon after her arrival. Under the ruling we made in The Alta, 136 Fed. 513, 69 C. C. A. 289, we hold that there was no error in denying the demand for the imposition of this penalty.

The decree is reversed, and the cause is remanded, with instructions to enter a decree for the United States for the tonnage duties of 50 cents per ton under section 4219.