## THE MERRITT.

1. A vessel built in the British Province of Canada, but owned wholly by citizens of the United States, cannot under the Registry Act of 1792 (1 Stat. at Large, 287) be a vessel of the United States; nor can she be a foreign vessel truly and wholly belonging to citizens of Canada or of Great Britain. If, therefore, such a vessel be engaged in transporting the products of Canada into ports of the United States, she may be forfeited under the act of March 1st, 1817 (3 Stat. at Large, 351), which enacts, under penalty of forfeiture, that "no goods, wares, or merchandise shall be imported into the United States from any foreign port or place, except in vessels of the United States, or in such foreign vessels as truly and wholly belong to the citizens or subjects of that country of which the goods are the growth, production, or manufacture."

2. Nor, assuming that neither Great Britain nor the Dominion of Canada have adopted "a similar regulation," could the vessel, in the absence of all documents, such as establish nationality, be taken to be a British or Canadian vessel, and so held to fall within the proviso to the above quoted enactment, which provides, "that this regulation shall not extend to the vessels of any foreign nation which has not adopted, and which shall not adopt, a similar regulation."

APPEAL from the Circuit Court for the Eastern District of Wisconsin; the case being thus:

By a statute of 1792,* it is enacted that no ships but those which have been registered in the manner therein prescribed, shall be denominated or deemed vessels of the United States, entitled to the benefits or privileges appertaining to such ships. Great Britain has a similar regulation, fixing what are to be regarded as British vessels.

By an act of March 1st, 1817,† it is enacted,

"SECTION 1. That after the 30th day of September next, no goods, wares, or merchandise shall be imported into the United States from any foreign port or place, except in vessels of the United States, or in such foreign vessels as truly and wholly belong to the citizens or subjects of that country of which the goods are the growth, production, or manufacture; or from which such goods, wares, or merchandise can only be, or most usually are, first shipped for transportation.

---

\* 1 Stat. at Large, 287.     † 3 Id. 351.

" *Provided, nevertheless,* That this regulation shall not extend to the vessels of any foreign nation which has not adopted, and which shall not adopt, a similar regulation."

A subsequent section of the latter act enacts that the vessel and cargo coming into the United States, in violation of those provisions, shall be forfeited.

In this condition of things—as appeared by the libel, information, and answer-hereafter mentioned—the bark Merritt, built in the province of Canada and within the dominion of Great Britain, but wholly owned by citizens of the United States, was employed in transporting coal and iron, products of the said province of Canada, from the port of Kingston, in the province named, into the port of Milwaukee, Wisconsin, in the United States.

Hereupon, a libel and information was filed in behalf of the United States alleging the facts above stated. One Murray, owner of the vessel, interposed as claimant, and not denying the allegations, answered, that at the time of the importations on account of which the proceedings were taken, neither the imperial government of Great Britain nor the Dominion of Canada* had adopted any "similar regulation" to that contained in the above-quoted act of 1817; and that, therefore, the case was taken out of the statute by the proviso to it. This answer was excepted to as irrelevant; that is to say was, in effect, demurred to; and the exception or demurrer being sustained by the court below, on an appeal from the District Court, the case was now brought here by Murray for review. The vessel had exhibited no papers.

*Mr. N. J. Emmons, for the claimant, appellant in this court:*

1st. If the Merritt is a *foreign* vessel—as she needs must

---

* This averment as to the Dominion of Canada was made, of course, under the supposition that the act of 30 Victoria, chapter 3 (2 Law Reports Statutes, § 91, p. 21), which, it was said, gives to the Parliament of Canada (subject to a power of veto in the Crown) exclusive regulation in " the regulation of trade and commerce," and "in navigation and shipping," might have made it a " country " within the meaning of the enacting clause of the act of 1817. As the vessel showed no papers from any source the point was unimportant.

be to bring her within the regulations of the act of 1817—she was either British or Canadian, it matters not which. As such, she would not be liable, falling within the proviso to section one, "that this regulation shall not extend to *the vessel of any foreign nation which has not adopted and which shall not adopt a similar regulation.*"

The act of 1817 was intended to retaliate upon Great Britain her unfriendly legislation on the subject of it, commencing with her act of 12th Charles II, "for the encouraging and increasing shipping and navigation," and continued by numerous subsequent enactments, all of which were supposed to have been reserved in force by the convention between the United States and Great Britain of July 3d, 1815.* We could show, we think, if it would aid us, the unqualified repeal by Parliament, long prior to the alleged offence, of all its legislation on the subject. Our allegation of fact is, that there was no regulation by either Great Britain or Canada "similar" to that of our act of 1817; that, on the contrary, American vessels were freed and absolved from all such restraints. This averment, however, stands admitted by the exception.

2d. If the Merritt was not a *foreign* vessel, that is to say, a vessel to which no distinct nationality could be assigned, then she has been guilty of no infraction of the law. If by the act of transfer from British to American citizens, she was utterly denationalized, and became a mere rover of the sea, without country, then she is not within the act of Congress. The act was not directed against such possible class of ships. It was not the mischief intended to be cured. We must have new legislation to forfeit a vessel thus circumstanced.

*Mr. Solicitor-General S. F. Phillips, contra:*

The policy of the act of 1817, which is to foster free trade between the United States and such foreign nations as adopt

---

* The Ship Recorder, 1 Blatchford's Circuit Court, 218, decided in 1847, chap. 18, § 4, 7 British Stat. at Large, 452.

a similar policy, does not cover the vessel seized here, which has no national character whatever. The Merritt is not *American;** nor is it *British*,† nor Canadian. She must, therefore, be a *foreign* vessel within the meaning of the act.

Mr. Justice HUNT delivered the opinion of the court.

The first section of the act of 1817 prohibits the importation of any goods or wares from any foreign port into the United States, except in two cases:

1st. They may be imported in vessels of the United States; or,

2d. In such foreign vessels as truly and wholly belong to the citizens or subjects of the country of which the goods are the production, or from which they are most usually first shipped for transportation.

The claimant's answer does not bring him within either of these classes.

1. The Merritt is not a vessel of the United States. The information alleged—it was not denied—and that is all that the case contains upon the subject,—that the Merritt was the property of citizens of the United States, and that she was a foreign-built vessel. That she was owned by citizens of the United States did not make her a vessel of the United States. By the statute of 1792 only ships which have been registered in the manner therein prescribed shall be denominated or deemed vessels of the United States, entitled to the benefits or privileges appertaining to such ships. There is no allegation that the Merritt had been so registered. Indeed, she could not have been under the provisions of the act last referred to.

2. The cargo of the Merritt was iron and lumber, the production of the British provinces of Canada, while her owners were citizens of the United States. She did not, therefore, come within the second description of the statute of 1817,

---

* See act of 1792, ch. 1, 1 Stat. at Large, 287; 1 Parsons on Shipping, 28.

† Abbott on Shipping, 79, and (since) 17 and 18 Vict., c. 104; 18 and 19 Vict., c. 91; 25 and 26 Vict., c. 63.

as a foreign vessel truly and wholly belonging to citizens of the country of which the cargo was the growth or production. On the contrary, it is conceded by the pleadings that her owners were American citizens. The Merritt, therefore, falls within the prohibition of the act, and is liable to forfeiture. She was neither a vessel of the United States nor a foreign vessel, wholly belonging to citizens of the country of which her cargo was the production.

But the claimant seeks the benefit of the proviso of the act, viz.: "That this regulation shall not extend to the vessels of any foreign nation which has not adopted, and shall not adopt, a similar regulation." He alleges that neither the kingdom of Great Britain nor the province of Canada has adopted similar regulations.

The case does not show that the Merritt has any of the evidences of being a British ship. She produces no register, or certificate, or document of any kind to entitle her to make that claim. The fact that she is foreign-built does not prove it. Proof even that she was built in Great Britain would not establish it. Pirates and rovers may issue from the most peaceful and most friendly ports. The documents a vessel carries furnish the only evidence of her nationality.[*] Of these the Merritt is entirely destitute, so far as the case shows. There is nothing, therefore, to bring her within the terms of the proviso.

DECREE AFFIRMED.

---

[*] See 1 Parsons on Shipping and Admiralty, 26, 27.