## WYNNE v. UNITED STATES.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE TERRITORY OF HAWAII.

No. 449.   Argued February 28, March 1, 1910.—Decided April 4, 1910.

The words "out of the jurisdiction of any particular State" as used in § 5339, Rev. Stat., refer to the States of the Union and not to any separate particular community; and one committing the crimes referred to in that section in the harbor of Honolulu in the Territory of Hawaii is within the jurisdiction of the District Court of the

United States for that Territory. *United States* v. *Bevans,* 3 Wheat.
337, and *Talbot* v. *Silver Bow County,* 139 U. S. 438, distinguished.
While by § 5 of the Organic Act of the Territory of Hawaii of April 30,
1890, c. 339, 31 Stat. 141, the Constitution of the United States and
laws not locally inapplicable were extended to Hawaii, and by § 6
of that act laws of Hawaii not repealed and not inconsistent with
such Constitution and laws were left in force, nothing in the act
operated to leave intact the jurisdiction of the territorial courts
over crimes committed in the harbors of Hawaiian ports exclusively
cognizable by the courts of the United States under § 5339, Rev.
Stat.
A copy of the original certificate of enrollment of a vessel certified
under seal by the deputy collector of customs of the port where
issued which is in form as required by § 4155, Rev. Stat., held to be
sufficient under the conditions of identification of the signature
and seal and § 882, Rev. Stat., to prove the national character of
the vessel upon which the crime was committed by one indicted
and tried under § 5339, Rev. Stat.

THE facts are stated in the opinion.

*Mr. Henry E. Davis,* with whom *Mr. Frank E. Thompson*
and *Mr. Charles F. Clemons* were on the brief, for plaintiff in
error:

The trial court was without jurisdiction of any act alleged
in the indictment, and of any act proved to have been com-
mitted.

If defendant is prosecuted for violation of § 5339, Rev.
Stat., the justification for the indictment must be found, if at
all, in the provisions of § 5 of the organic act for Hawaii, by
which in a general way the laws of the United States are ex-
tended to the Hawaiian Islands, 31 Stat. 141, but the exten-
sion is limited by the provision continuing the laws of Hawaii
not inconsistent with the Constitution or laws of the United
States.

Among the statutes so preserved and continued in force are
those relating to homicide and punishing murder. Organic
act, § 6; Penal Laws, 1897, Hawaii, pp. 62–64; Rev. Laws,
1905, Hawaii, pp. 1074–1076.

The relations between the United States District Court for the District of Hawaii and other Federal courts on the one hand and the Hawaiian territorial courts on the other are similar to those between Federal and state courts. See *Equitable L. A. Co.* v. *Brown,* 187 U. S. 309; *Hawaii* v. *Carter,* 19 Hawaii, 198; *Hawaii* v. *Martin,* 19 Hawaii, 201; *Hawaii* v. *Keizo,* 17 Hawaii, 297; *Bierce* v. *Hutchins,* 18 Hawaii, 518. The Republic of Hawaii, before its annexation to the United States had a fully organized government. *Re Wilder S. S. Co.,* 183 U. S. 545; *Territory* v. *Martin,* 19 Hawaii, 201, 214.

There can be no reasonable doubt that Congress intended to leave the jurisdiction of the crime of murder, as of the crimes of manslaughter, rape, and assault and battery and other crimes which originated as common-law offenses, just where it had always been before annexation, *i. e.,* in the Hawaiian courts, whose existence was continued by §§ 81, 82, of the organic act, and see Rev. Laws, 1905, Hawaii, cc. 112, 113; Civil Laws, 1897, Hawaii, cc. 80, 81.

The word "State" should be construed in its broader meaning of, any separate political community, *Talbott* v. *Silver Bow County,* 139 U. S. 438, 444; *The Ullock,* 19 Fed. Rep. 297, 212; *Neill* v. *Wilson,* 14 Oregon, 410; *Geofroy* v. *Riggs,* 133 U. S. 258, unless there is something to require a narrow construction of the word State when used in our statutes, it should be given a broad and liberal meaning, in order to effect a reasonable construction, and to carry out the reason and spirit of the law.

The words "out of the jurisdiction of any particular State," were intended to provide a means of punishment where no such means were afforded. It was thereby intended to give jurisdiction to the Federal court in cases where the judicial bodies of the particular State (*i. e.,* political community, including Territory), were not invested with jurisdiction in the premises. See *United States* v. *Bevans,* 3 Wheat. 387, as to construction of effect of Art. III of the Constitution, and intent of Congress, in originally enacting the statute here involved

(Rev. Stat., § 5339), for punishment of murder committed "in a river, etc., out of the jurisdiction of any State," and holding that if there be common jurisdiction, the crime cannot be punished in the courts of the Union.

In *United States* v. *Bevans*, this court held the Federal court to have no jurisdiction even though the act charged was committed on board a ship of war of the United States, which was contended to be "a place within the sole and exclusive jurisdiction of the United States," under the terms of the statute in question, and was at all events clearly "out of the jurisdiction of any particular State." And see *Manchester* v. *Massachusetts*, 139 U. S. 240, applying the principle of the *Bevans case* nearly three-quarters of a century later. The act here charged in the indictment was committed within the body of the county, then the County of Oahu, now the City and County of Honolulu. *United States* v. *New Bedford Bridge Co.*, Fed. Cases, No. 15,867. Under the Hawaiian judicial system, as continued in force by the organic act, the territorial judiciary has the functions of state courts, while a separate Federal judiciary is created. 35 Stat. 838. This is quite different from the provisions which, for instance, were enacted in the case of the Territory of Washington, in which only one single judicial tribunal was created. See *The City of Panama*, 101 U. S. 461.

So, while the Republic of Hawaii ceded its territory, its public property and its rights therein and control thereof to the United States of America (Treaty of Annexation, Art. II, Rev. Laws, 1905, Hawaii, pp. 37, 40; Joint Res. Cong. of July 7, 1898), nevertheless the United States forthwith vested the possession, use, and control thereof in the government of the newly constituted Territory of Hawaii, reinvesting sovereignty subject to the future action of Congress.

Inasmuch, therefore, as the United States had so ceded to the Territory of Hawaii the control of these places and property, or, more strictly, having reinvested the Territory with such control, there was no jurisdiction left in the United States

courts, which are courts of limited jurisdiction and whose jurisdiction is never presumed but must always be found in the strict letter of the law.

There was a failure to prove the nationality of the vessel. While it is no defense to an indictment, under § 5339, Rev. Stat., that the vessel on which the crime was committed was never legally registered or enrolled, provided that she was owned by a citizen of the United States, it must yet appear that either she was registered or enrolled, or so owned by a citizen; and as a general rule, to which this case offers no exception, courts of the United States have no jurisdiction of the crime of murder when committed on board a foreign vessel. *United States* v. *Plumer*, 3 Cliff. 28. See *United States* v. *Holmes*, 5 Wheat. 412.

And the general rule is that such courts have no jurisdiction of the offense even when committed upon the high seas, except when committed on board a ship of the United States, unless it appears that the vessel was sailing under no national flag.

*Mr. Assistant Attorney-General Fowler* for the United States:

The United States District Court for the Territory of Hawaii had jurisdiction of the offense.

It is insisted on behalf of the plaintiff in error that the courts of the government of the Territory of Hawaii alone had jurisdiction to try the accused. This contention is not maintainable for the following reasons:

The United States courts had jurisdiction of this offense prior to the passage of the act of April 30, 1900, to provide a government for the Territory of Hawaii. 31 Stat. 141.

The claim of plaintiff in error that the phrase "particular State," as used in § 5339, Rev. Stat., is not limited to the several States of the Union, but that it also includes any other government which is regularly organized and has courts in which punishment for offenses may be inflicted, cannot be sustained—for cases to the contrary see *United States* v. *Ross*, 1 Gall. 626; *St. Clair* v. *United States*, 154 U. S. 144; *Anderson*

v. *United States,* 170 U. S. 489. The indictments in all these cases were drawn upon the theory that the word "State" as used in the statute had reference to a State of the United States, and in each case they were treated as sufficient by the court.

If, however, the word "State" as used had the meaning insisted upon by plaintiff in error, the indictments in those cases were not sufficient, because they did not allege the necessary jurisdictional fact that the offense was committed outside of the United States or any other State or government. *United States* v. *Bevans,* 3 Wheat. 336.

There is nothing in the act under which the territorial government of Hawaii was organized which either expressly or by implication affects § 5339, Rev. Stat., or indicates that it was the intention of Congress to deprive the United States court of jurisdiction to try an offender for the crime of murder committed in any place mentioned in said section within the jurisdiction of said Territory of Hawaii. See 31 Stat. 141.

Section 6 of the organic act only continued in force all laws which had theretofore existed in Hawaii, except such as were repealed by the act and were inconsistent with the Constitution and laws of the United States, while the purpose of section 5 was to extend the Constitution and laws of the United States to the Territory of Hawaii.

Sections 5 and 6 of the organic act do nothing more than to leave the jurisdiction of the courts of Hawaii precisely as it was before the passage of the act, and certainly do not have the effect of increasing their jurisdiction to such an extent as to deprive the Federal courts of the jurisdiction which they had previously possessed under § 5339, Rev. Stat.

It is sufficiently proven by competent evidence that the vessel *Rosecrans,* upon which the murder was committed, was owned by a corporation organized under the laws of California.

Courts will notice without proof the signatures and official seals of public officers. 17 Am. Eng. Enc. of Law, 918, and

numerous cases cited; *Himmelmann* v. *Hoadley*, 44 California, 214.

MR. JUSTICE LURTON delivered the opinion of the court.

The plaintiff in error, John Wynne, has sued out this writ of error from a judgment and sentence of death for a murder committed on board the steamer *Rosecrans,* an American vessel, while lying in the harbor of Honolulu in the Territory of Hawaii. The indictment upon which he was tried included four counts. In each it was charged that the murder had been done on board the said American vessel, lying in the harbor of Honolulu, in the district and territory of Hawaii, and within the admiralty and maritime jurisdiction of the United States, "and out of the jurisdiction of any particular State of the said United States of America." In two of the counts the locality is described as a certain "haven" of the Pacific Ocean, and in the others as a certain "arm" of the Pacific Ocean.

The question to which the counsel for the plaintiff in error has chiefly invited the attention of the court is, whether the indictment charges an offense within the jurisdiction of the District Court of the United States for the Territory of Hawaii. It was founded upon § 5339, Rev. Stat., and particularly the second paragraph. The section is set out below:

"SEC. 5339. Every person who commits murder—

"First. Within any fort, arsenal, dock-yard, magazine, or in any other place or district of country under the exclusive jurisdiction of the United States;

"Second. Or upon the high seas, or in any arm of the sea, or in any river, haven, creek, basin, or bay within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular State;

"Third. Or who upon any such waters maliciously strikes, stabs, wounds, poisons, or shoots at any other person, of which striking, stabbing, wounding, poisoning, or shooting such other person dies, either on land or at sea, within or without the United States, shall suffer death."

Shortly stated, the contention is, that the haven or arm of the Pacific Ocean which constitutes the harbor of Honolulu, although "within the admiralty and maritime jurisdiction of the United States," is a locality not "out of the jurisdiction of any particular State," because within the jurisdiction of the Territory of Hawaii. The basis for the contention is that the words, "out of the jurisdiction of any particular State," do not refer to the jurisdiction of a State of the United States, but are to be given the wider meaning of out of the jurisdiction of any separate political community, and that the Territory of Hawaii constitutes such a political organism. The postulate cannot be conceded. The Crimes Act of April 30, 1790, ch. 9, vol. 1, Statutes at Large, p. 112, contained the same limiting words. Thus in the eighth section of that act jurisdiction was asserted over the crime of murder, as well as certain other crimes, when committed "upon the high seas, or in any river, haven, basin or bay, out of the jurisdiction of any particular State." The act was remolded by the act of March 3, 1825, ch. 65, § 4, p. 115, 4 Statutes at Large. The further limitation of "within the admiralty and maritime jurisdiction of the United States" was added, but otherwise the jurisdiction remained the same. Without substantial change the provision of the last act was carried into the Revised Statutes as part of § 5339.

To support the contention urged counsel have cited *United States* v. *Bevans,* 3 Wheat. 337, 388, and *Talbott* v. *Silver Bow County,* 139 U. S. 438, 444. The indictment in the *Bevans case* was for a murder done on board a war vessel of the United States while she lay at anchor a mile or more from the shores of the bay constituting the harbor of Boston, in the State of Massachusetts. The bay was wholly within the territorial jurisdiction of the State of Massachusetts, and the court said that it was not material whether the courts of that State had cognizance of the offense or not. "To bring the offense," said the court, "within the jurisdiction of the courts of the Union, it must have been committed in a river, etc., and out of the jurisdiction of any State. It is not the offense committed, but the

bay in which it is committed, which must be out of the jurisdiction of the State. If then it should be true that Massachusetts can take no cognizance of the offense; yet unless the place itself be out of her jurisdiction, congress has not given cognizance of that offense to its courts. If there be common jurisdiction, the crime cannot be punished in the courts of the Union." The case has no bearing upon the question here involved, except so far as that the jurisdiction of the courts of the United States was there held to be excluded, because the place where the offense was committed was within the territorial jurisdiction of one of the States of the Union. The question in the *Talbott case* was whether a Territory was within the meaning of § 5219, Rev. Stat., which permitted a "State within which" a national bank is located to tax its shares. The court held that the permission extended to States in that regard included Territories. The decision was based upon the obvious intent of Congress looking to the scope and purpose of the act; the court saying, among other things, "While the word State is often used in contradistinction to Territory, yet in its general public sense, and as sometimes used in the statutes and the proceedings of the Government, it has the larger meaning of any separate political community, including therein the District of Columbia, and the Territories as well as those political communities known as States of the Union." But the word "State," as used in the eighth section of the act of 1790, and the subsequent act of 1825, as well as used in § 5339, Rev. Stat., must be determined from its own context. The word State as there used has been uniformly held as referring only to the territorial jurisdiction of one of the United States, and not to any other government or political community. Thus, in *United States* v. *Ross*, 1 Gall. 626, Mr. Justice Story said, in reference to the words in § 4 of the act of 1825, above referred to, that "The additional words of the act, 'in any river, haven, basin, or bay out of the jurisdiction of any particular State,' refer to such places without any of the United States, and not without foreign States, as will be very clear on examining the pro-

vision as to the place of trial, in the close of the same section."
In *United States* v. *Brailsford,* 5 Wheat. 184, 189, 200, one of
the questions certified was "whether the words, 'out of the
jurisdiction of any particular State,' in the eighth section of the
act of Congress of the 30th of April, 1790, ch. 9, vol. 1, Stat-
utes at Large, must be construed to mean out of the jurisdic-
tion of any particular State of the United States?"   To this
the court said: "We think it obvious that out of any particular
State must be construed to mean 'out of any one of the United
States.'   By examining the context it will be seen that par-
ticular State is uniformly used in contradistinction to United
States."   In *United States* v. *Rodgers,* 150 U. S. 249, 265, the
same meaning was attached to the words in question, and an
offense committed on the Detroit River, on a vessel belonging
to a citizen of the United States, was held cognizable by the
District Court of the United States for the Eastern District of
Michigan, although it appeared that the offense had been com-
mitted *within the territorial limits of the Dominion of Canada,*
and therefore not within the jurisdiction of any particular
State of the United States.   See also *St. Clair* v. *United States,*
154 U. S. 134, 144, and *Andersen* v. *United States,* 170 U. S.
489.

That there existed an organized political community in the
Hawaiian Islands, exercising political, civil and penal jurisdic-
tion throughout what now constitutes the Territory of Hawaii,
including jurisdiction over the bay or haven in question, when
that Territory was acquired under the joint resolution of Con-
gress of July 7, 1898, did not prevent the operation of § 5339,
Rev. Stat.   That "political community" did not constitute
one of the States of the United States; and if the other juris-
dictional facts existed, § 5339 came at once into operation.

Unless, therefore, there was something in the legislation of
Congress found in the act of April 30, 1900, c. 339, 31 Stat
141, providing a government for the Territory of Hawaii,
which excluded the operation of the statute, the jurisdiction
of the courts of the United States over the bay here in question

in respect of the murder there charged to have been committed, was beyond question.

Counsel have cited and relied upon the fifth, sixth and seventh sections of the organic act referred to, in connection with §§ 83, 84, 89 and 91, as operating to leave intact the jurisdiction of the territorial courts of the Territory under existing penal laws over this "haven" or "arm" of the sea in respect to homicides there committed. The fifth section of the organic act referred to provided, "That the Constitution, and except as herein otherwise provided, all the laws of the United States, which are not locally inapplicable, shall have the same force and effect within the said Territory as elsewhere in the United States." The sixth section continued in force the laws of Hawaii "not inconsistent with the Constitution or laws of the United States, or the provisions of\this act; . . . subject to repeal or amendment by the legislature of Hawaii or the Congress of the United States." The seventh section expressly repeals a long list of local laws, civil and criminal, and does not expressly include the chapter of the penal laws of Hawaii of 1897 relating to homicides. The eighty-first section vests the judicial power of the Territory in one Supreme Court and such inferior courts as the legislature may establish, and continues in force the laws of Hawaii concerning the jurisdiction and procedure of such courts, "except as herein provided." Section 83 continues in force the laws of Hawaii relating to the judicial department, including civil and criminal procedure, subject to modification by Congress or the legislature. Section 89 provides that the control of wharves and landings constructed by the Republic of Hawaii, on any seacoast, bay or harbor, shall remain under the control of the government of the Territory of Hawaii. Section 91 leaves public property, which had been ceded to the United States, under the control of the government of the Territory.

We cannot see that any of the things referred to have the effect claimed for them. The plain purpose of the fifth section was to extend the Constitution and laws of the United States,

not locally inapplicable, to the Territory, and of the sixth section, to leave in force the laws of Hawaii, except as repealed by the act or inconsistent with the Constitution or laws of the United States.

If, when that act was passed, one who committed murder in the harbor of Honolulu was subject to trial in the courts of the United States, though within the territorial waters of Hawaii, the organic act neither expressly nor impliedly deprives the courts of the Union of the jurisdiction which they had before. It was within the power of Congress to confer upon its courts exclusive jurisdiction over all offenses committed within the Territory, whether on land or water. This it did not elect to exercise. It provided for the establishment of a District Court of the United States, with all of the powers and jurisdiction of a District Court and of a Circuit Court of the United States. It provided also for the organization of local courts with the jurisdiction conferred by the existing laws of Hawaii upon its local courts, except as such laws were in conflict with the act itself or the Constitution and laws of the United States. If it be true, as claimed, that the territorial courts exercise jurisdiction over homicides in the harbor of Honolulu, under and by virtue of the laws of Hawaii thus continued in force, it only establishes that there may be concurrent jurisdiction in respect of certain crimes when committed in certain places, and is far from establishing that the courts of the Union have been deprived of a jurisdiction which they have at all times claimed and exercised over certain offenses when committed upon the high seas, or in any arm of the sea, or in any river, basin, haven, creek or bay within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

We find nothing in the special legislation applicable to that Territory which prevented the operation of § 5339.

There are assignments touching the competency of certain evidence relied upon to establish the national character of the *Rosecrans*, and others which challenge the sufficiency of the

evidence to carry the case to the jury against a motion to direct a verdict for insufficiency of evidence upon that point. A certificate of enrollment, purporting to have been issued at San Francisco by one Coey, "acting deputy collector of customs," initialed "W," and signed by E. W. Marlin, deputy naval officer, as required by § 4332, Rev. Stat., which recited that the vessel was solely owned by the National Oil and Transportation Company, a corporation organized under the laws of California, was introduced for the purpose of establishing that the vessel was of American nationality. There was also evidence that she carried the flag of the United States, evidence admissible upon a mere question of nationality. *St. Clair* v. *United States*, 154 U. S. 134, 151. The principal objection is that this certificate was not the original, but a copy not sufficiently authenticated. The authentication was in these words:

"District and Port of San Francisco.

"I hereby certify the within to be a true copy of the original issued by this office.

"Given under my hand and seal this 5 day of October, 1907.

      (Sgd.)     N. S. FARLEY,     [SEAL.]
                      *Deputy Collector of Customs.*
                      W."

The requirements for registration are set out in § 4142. The certificate in question was in form as required by § 4155.

There was evidence of a witness that he had himself received custom papers from the customhouse at San Francisco, signed by Farley, and was familiar with the signature from its appearance upon ship licenses on board ships. He had never seen Farley write, and only identified the signature from familiarity with it obtained from this and other like official papers. He also said he was familiar with the seal of the customs officials at San Francisco.

The appointment of deputy collectors is provided for by §§ 2630, 2633, Rev. Stat. By § 882, Rev. Stat., copies of any

papers or documents, in any of the executive departments, under the seal of the proper department, are made admissible in evidence equally with the original.

There was no evidence whatever casting suspicion upon the genuineness of the copy or of the seal or the signature of Farley, and none which challenged in any way the American character of the ship. Under such circumstances and for the purposes of this case it was not error to assume that the document was genuinely executed by Farley, that he was what he claimed to be, a deputy collector of customs, and that his signature had been signed by himself or one authorized to sign for him. 3 Wigmore on Evidence, § 2161.

There was no error, and the judgment is

*Affirmed.*