## GERRADIN v. UNITED FRUIT CO.
### No. 4324.

District Court, E. D. New York.

July 8, 1931.

Benjamin Bernstein, of New York City (Jay S. Jones, of Brooklyn, N. Y., and Max J. Wolff, of New York City, of counsel), for plaintiff.

W. Dale Williams, of New York City (M. L. Fearey and G. F. Tinker, both of New York City, of counsel), for defendant.

BYERS, District Judge.

This case came to trial on the common-law calendar of this court (having been removed from the state Supreme Court) on March 5, 1931.

The plaintiff, an American citizen, sues to recover damages for personal injuries sus-

tained by him, while in the employ of the defendant, as a cook's mate on the steamship Castilla; that is, he sought employment on August 30, 1929, in the city of New York, at the office of the defendant, and was told to apply on board the Castilla at Pier 9, East River. This he did, and was accepted, and told to report for duty the following day, which was a Saturday. He worked on the ship as directed, and on the next day she sailed for Central America.

The plaintiff signed on, before the chief steward, probably on August 30th; this is a matter of conjecture, as are the precise terms of employment, because the defendant testifies that the ship's articles have been lost. [1] In the absence thereof, no presumptions can be indulged as to whether the contractual relations of the parties were ordinary or extraordinary, conventional or otherwise.

The importance of this element of the case lies in the undisputed fact that the Castilla is registered under the flag of the Republic of Honduras, although owned by one American corporation and chartered to another, the defendant.

The occurrence giving rise to the plaintiff's claim happened on Tuesday, September 3, 1929, the third day out, when the vessel was on the high seas.

The plaintiff was mounting a ladder connecting two of the decks, carrying a pail of vegetables in his right hand, weighing 40 pounds or so. He grasped the rail of the ladder or steps with his left hand, and, having reached the seventh step, was precipitated to the deck below, falling on his left side, and suffering injuries, including the rupture of the left kidney, which later was removed at a hospital in this city.

At the trial, the plaintiff testified that he was caused to slip and fall, because, as he mounted the steps, his head being bowed, he received in his face and chest a pailful of soapy water, discharged by an unidentified sailor or deck hand toward the top of the steps which he was mounting; that some of the water fell on the steps, making them slippery, whereby he was caused to lose his footing, fall, and suffer the injuries in question.

The defendant called one or more witnesses who stated that, upon the return to this port of the Castilla, the plaintiff made known his injuries, but stated that he was caused to fall by a lurch of the ship, and that no mention was made of the pailful of soapy water.

At the close of the case, the defendant moved for the direction of a verdict, and de-

cision was reserved. The verdict of the jury was rendered on March 10, 1931, and was for the plaintiff in the sum of $10,000.

The motion for the directed verdict has been carefully presented by both sides, and the single question discussed is whether the plaintiff, being an American sailor, employed in New York by an American corporation, is entitled to the benefit of the Jones Act (section 33 [46 USCA § 688]); the injury having occurred on the high seas, aboard a vessel of Honduran registry.

The absence of the ship's articles manifestly removes any question of the plaintiff's having contracted to be bound by the laws of the Republic of Honduras, touching his relations to his employer. Similarly it precludes considering whether there was a reservation of rights to seamen under the statutes of this country.

The question, therefore, seems to turn upon whether the Honduran registration of the Castilla necessarily imposed upon the plaintiff the law of that republic, by which alone his legal rights against the defendant were measured.

Under those laws, according to the testimony, the rights of an injured seaman are restricted to maintenance and cure; the plaintiff has been accorded such relief.

It is believed that the question here presented has not been previously adjudicated.

The contentions of the parties turn upon the effect to be accorded to the Honduran registration. The plaintiff asserts that the legal relations of the seaman and his employer are governed by the law of the United States, because the nationality of the vessel is determined by the domicile of its owner; and the defendant contends that the registration in Honduras, despite domestic ownership, brought the Castilla, and hence the plaintiff, within the exclusive domain of Honduran law.

That an American citizen who accepts employment on a foreign ship subjects himself to the laws of the country of the ship's nationality, has been decided: In re Ross, 140 U. S. 453, 11 S. Ct. 897, 35 L. Ed. 581; Rainey v. N. Y. & P. S. S. Co. (C. C. A.) 216 F. 449, L. R. A. 1916A, 1149; The Hanna Nielsen (C. C. A.) 273 F. 171, and cases cited.

It becomes necessary to inquire, therefore, if the Honduran registry, and the display of the flag of that country, constituted the Castilla a ship of Honduran nationality, so as to render those decisions controlling in this controversy.

That which has been written and decided upon this general subject involves, with but one exception (The San Jose Indiano, Fed. Cas. No. 12322 infra), a discussion of the circumstances presented by ownership of a vessel by a citizen or resident, accompanied by failure to obtain a certificate of registry; that case alone concerns ownership by a resident of one country and registry under the flag of another.

The departmental memoranda quoted in Judge Moore's Digest of International Law, § 323, have to do almost exclusively with questions concerning ownership by citizens of the United States of vessels which have not been or could not be admitted to registry or enrolment in this country, and the rights accorded to such vessels to fly the flag of the United States, and claim the protection thereof. It is in this connection that an article contributed to Wharton's Digest of International Law is quoted in volume 2, at page 1029, as follows: "A vessel as a subject of nationality is not considered a personality any more than any other chattel, and cannot have any other nationality impressed on it except that arising from ownership. The place in which a vessel is built does not give it nationality any more than the place of origin affects that of its cargo. It is the residence of the owner which stamps alike the vessel and its cargo with its national character."

Notwithstanding that the foregoing was written in connection with the exposition of a thesis not here involved, the abstract statement carries conviction, that a ship is like any other chattel in that its nationality is based upon ownership.

Applied to this case, it means that the domicile of the Castilla is, of necessity, that of its owner. A contrary conclusion would mean that the nationality of an inanimate thing, an item of personal property, which according to all teachings is derivative, can be viewed as existing independently in the chattel, solely as the result of a certificate of registry which does not purport to be the conduit of title.

The essential features of that document, which is in evidence as Defendant's Exhibit E, are as follows:

"April 22.—On this date appeared in this office and in behalf of the Tela Railroad Company, Mr. Donaldo Guerrero, requesting the registry of the steamship 'Castilla' under the Honduranean flag; and there not being reasons to deny the application of Mr. Guer-

rero, on this same date the vessel referred to is registered with the following description: Name of the vessel: 'Castilla.'—Gross tonnage of displacement: 4087.—Net tonnage of registry: 2159.—Dimensions: length, 342 feet; dimensions: width, 48 feet.—System of combustion: Oil.—Date of construction: March 22, 1927.—Owner of the vessel: Ellis Steamship Corporation.—Nationality of the owning company: American.—Tela, April 22, 1927.—J. Ines Perez.—Seal.—Max Bardales. Secretary.—Seal."

The unique feature of the problem here presented is apparent from the language of the certificate of registry. Coupled with the reference to the flag of the Republic of Honduras, is the certification that the nationality of the owner is American.

Plausible argument might be made that such a certificate, for reasons acceptable to the granting power, in express terms recognizes the national character of the vessel to be other than that of the Republic of Honduras.

Having in mind that the status of a vessel owned in one country and registered in another has not been the subject of adjudication so far as this court has been able to ascertain (with the exception noted), an understanding of what is comprehended in the registry of a ship or lack of it, as affecting the domicile of the vessel, may be promoted by a consideration of the following cases:

The Alta (C. C. A.) 136 F. 513, 517. A citizen of the United States, resident in the Philippines, purchased a British-built barkentine from a Philippine corporation; the vessel was not registered, and cleared from Manila, P. I, carrying a certificate of ownership, for Port Townsend, Wash. Upon arrival, she was seized for nonpayment of tonnage dues and light money. Certain tonnage dues were tendered by the master. These, according to the applicable statute as to a foreign vessel, were greater than on "vessels of the United States."

The opinion states that the quoted words mean more than a vessel whose nationality is American, and that the Alta could not be registered here because not built in this country. Continuing, "But while the Alta was not 'a vessel of the United States,' as spoken of and defined in its statutes, she was an American vessel because of the nationality of her owner." Citing cases.

Held that light duties were not collectible, but that the tax imposed by section 11 of the Act of June 19, 1886 (24 Stat. 81 [46

USCA § 121]), of 6 cents per ton was payable; this was the tax offered by the master. The "light" duties, by the terms of the statute (46 USCA § 128), were to be levied and collected on all vessels "not of the United States," which might enter its ports, but in terms the statute expressly exempted unregistered vessels owned by citizens of the United States, carrying a sea-letter or other regular custom-house document.

Also tonnage duties levied upon a ship coming from a foreign port were held not to apply.

The Alta (C. C. A.) 148 F. 663. This case affecting the same vessel, on a later voyage from a foreign port, decided that the tonnage dues withheld in the first case, applied in the second. The ruling was the same as to light dues.

The Conqueror (D. C.) 49 F. 99, 106. A foreign-built yacht was purchased by a citizen of the United States, and a bill of sale given. She could not acquire American registry, and the collector of customs of this port sought to hold the yacht for nonpayment of import duty, on the theory that she was within the tariff on goods, etc. In denying this contention, Judge Addison Brown rendered an opinion in which the following occurs: "After the bill of sale was made, she was none the less governed by the shipping laws alone; and, but for the acts of 1870 and 1886, she would have remained subject to tonnage duties precisely as before, whether the bill of sale was presented and certified at once, or not till long afterwards. The certification has not the effect ascribed to it. It contributed nothing to give the yacht an American domicile, or to make her American property. She was made American property months before by the bill of sale, and her domicile followed that of her owner. The certification did not make her a 'vessel of the United States,' nor give her the general rights or privileges of vessels of the United States. The Merritt, 17 Wall. 582 [21 L. Ed. 682]. She could not enter into the foreign trade, nor into the internal or coastwise trade of the country. Sections 2497, 4131, 4311. The only use of the certification was to serve as 'proof of American ownership,' for her convenience in navigation as a pleasure yacht, and to absolve her from the payment of light-money."

The decision as to the nonliability of the yacht to import duty was upheld by the Supreme Court. The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937.

The Merritt, 17 Wall. 582, 21 L. Ed. 682. This vessel was owned by citizens of the United States, but was foreign-built, and was held subject to seizure, for having been used to import a cargo in violation of an act of Congress of 1817 (3 Stat. 351).

The domestic ownership did not constitute her a vessel of the United States, and the absence of registration or similar documents deprived her owners of the opportunity to demonstrate that she was a British vessel, and hence within the exception of the statute.

Tonnage duties are now prescribed in title 46, U. S. C. § 121 (46 USCA § 121), and light money in section 128 (46 USCA § 128). These statutes are of interest to the present discussion, as are the cases which have applied them, in so far as they point to a recognition by Congress of the difference between the national status said to be accorded to a vessel by virtue of registration, and the domicile of a vessel as a chattel, which is determined by the domicile of the vessel's owner.

It is thought that these statutes and decisions mean that, so far as United States registry is concerned, it necessarily imports United States domicile of the vessel, but that domicile exists without, i. e., apart from, registration. This distinction is believed to be important in connection with the authorities cited by defendant to sustain the proposition that the law which governs the vessel, and hence all on board, is the law of the country whose flag she flies. The doctrine requires examination in the light of certain leading cases:

The Adula, 176 U. S. 361, 20 S. Ct. 432, 439, 44 L. Ed. 505. This ship, of British registry and flag, was chartered on June 28, 1898, to a Spanish subject, formerly a resident of Cuba, while war was pending between this country and Spain. The purpose of the charter was the conveyance of passengers from Cuban ports to Kingston. While so engaged, the Adula violated the blockade of Guantanamo, and was seized and condemned as a prize, and the decree of the District Court was affirmed.

During the course of the opinion of the court, reference was made to the nationality of the ship while under charter, as follows:

"From all the testimony in the case it appears very clear: * * *

"That the Adula was chartered to a Spanish subject for a voyage to Guantanamo, Santiago, or Manzanillo, for the purpose of bringing away refugees, and that such voy-

age was primarily, at least, a commercial one for the personal profit of the charterer. During such charter she was to a certain extent, pro hac vice, a Spanish vessel, and a notice to Solis [the charterer] of the existence of the blockade was a notice to the vessel." Citing prize cases.

Cunard S. S. Co. v. Mellon, 262 U. S. 100, 43 S. Ct. 504, 507, 67 L. Ed. 894, 27 A. L. R. 1306. In deciding, among other things, that liquor carried on a British ship, for consumption by passengers and crew, was within the contemplation of the Eighteenth Amendment and the National Prohibition Law (27 USCA), the opinion of the court refers to the extension of territory theory, said to be the basis for the law of the flag principle, in this wise: "In support of their contention the defendants refer to the statement sometimes made that a merchant ship is a part of the territory of the country whose flag she flies. But this, as has been aptly observed, is a figure of speech, a metaphor. Scharrenberg v. Dollar S. S. Co., 245 U. S. 122, 127, 38 S. Ct. 28, 62 L. Ed. 189; In re Ross, 140 U. S. 453, 464, 11 S. Ct. 897, 35 L. Ed. 581; 1 Moore International Law Digest, § 174; Westlake, International Law (2d Ed.) p. 264; Hall, International Law (7th Ed. [Higgins]) § 76; Manning, Law of Nations (Amos), p. 276; Piggott Nationality, pt. II, p. 13. The jurisdiction which it is intended to describe arises out of the nationality of the ship, as established by her domicile, registry and use of the flag, and partakes more of the characteristics of personal than of territorial sovereignty. See The Hamilton, 207 U. S. 398, 403, 28 S. Ct. 133, 52 L. Ed. 264; American Banana Co. v. United Fruit Co., 213 U. S. 347, 355, 29 S. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047; 1 Oppenheim International Law (3d Ed.) §§ 123—125, 128."

In thus assigning to the expression its figurative value, and by way of indicating the practical difficulties encountered in applying it, the first case cited by the court presents one aspect of the argument here made by the defendant:

Scharrenberg v. Dollar S. S. Line, 245 U. S. 122, 38 S. Ct. 28, 29, 62 L. Ed. 189. In this case the respondent employed Chinese seamen, and the effort was made to show that this was a violation of our contract labor law. That the respondent's ships, of United States registry, ownership, and domicile, were extensions of United States territory within the purview of the statute. As to this, the court says: "It is, of course, true that, for the purposes of jurisdiction, a ship, even on the high seas, is often said to be a part of the territory of the nation whose flag it flies. But in the physical sense this expression is obviously figurative (1 Moore, International Law Dig. § 174), and to expand the doctrine to the extent of treating seamen employed on such a ship as working in the country of its registry is quite impossible. Thus, the seamen employed on the Mackinaw were not within either the spirit or the letter of the law on which the petitioner bases his action, and in any point of view his contention is fanciful and unsound and must be denied."

The bearing of the foregoing reasoning on the defendant's contention, that the plaintiff, being on the Castilla, of Honduran flag and registry, was in effect on Honduran territory, and hence that his relation to his employer is wholly to be determined by Honduran law, is thought to be significant.

The defendant relies upon St. Clair v. U. S., 154 U. S. 134, 14 S. Ct. 1002, 1009, 38 L. Ed. 936. Here was a charge of murder upon the high seas, committed on a vessel of United States registry, therefore within the jurisdiction of the United States courts. The certificate of registry was produced, but it did not show the nationality of the owners. Held this was sufficient, i. e., "a prima facie case of proper registry under the laws of the United States and of the nationality of the vessel and its owners. 'The purpose of a register,' this court has said, 'is to declare the nationality of a vessel engaged in trade with foreign nations, and to enable her to assert that nationality wherever found.'" Citing The Mohawk, 3 Wall. (70 U. S.) 566, 18 L. Ed. 67.

The court recites the requirement of ownership by citizens of the United States, of vessels built in this country, as the basis of registration, which explains the prima facie quality of the proof offered.

That decision is of no assistance in the problem here presented.

The Mohawk, supra, is likewise of no bearing on this controversy. A vessel of foreign construction was granted enrolment in this country, as the result of fraud; the certificate was canceled and the ship forfeited. The definition of registration was given in contrast to enrolment.

See also: Wynne v. U. S., 217 U. S. 234, 30 S. Ct. 447, 54 L. Ed. 748. This case is substantially like the St. Clair Case, supra.

Grand Trunk Ry. Co. v. Wright (C. C. A.) 21 F.(2d) 814. A vessel having United States registry was chartered by a Canadian

corporation, and plied between inland ports of the two countries; the plaintiff's decedent came to his death while discharging his duties as a member of the crew. The court says that the relation of master and servant existed between the Canadian corporation and the decedent, who was also a Canadian.

The court held that the Federal Employers' Liability Act (45 USCA §§ 51–59) did not apply, although that is said to be the argument of "the flag." The decision was affirmed but not on this point. , 278 U. S. 577, 49 S. Ct. 176, 73 L. Ed. 516.

U. S. v. Jenkins (1838) 26 Fed. Cas. 603, No. 15473. In a criminal case, it is said that ownership determines a vessel's national character, and may be shown in the same manner as that of any other chattel. The vessel was of American registry.

The San Jose Indiano (1814) Fed. Cas. No. 12322. During the War of 1812, a Portuguese vessel, flying that flag, was condemned as a prize, on proof that her owner, a native of Portugal, was domiciled in England. This is the only case which has been found in which ownership by a resident in one country was held to determine the national character of the ship, although she sailed under the flag of another country. It was decided by Mr. Justice Story, sitting as a Circuit Judge, and this aspect of the case seems not to have been appealed to the Supreme Court.

These cases seem to accord to the law of the flag, so called, such deference as the exigencies of adjudication may seem to require in a given state of facts, and, in the presence of necessity, the courts will look beyond the registry of a vessel in order adequately to determine a given controversy.

Recurring now to the registration of the Castilla and its influence upon the plaintiff's cause of action, it is to be observed:

■ The registration is presumed to meet the requirements of the law under which it was granted, and no attempt has been made to question the authenticity or the legal effect of the document within the country of its issue. For purposes pertaining to that jurisdiction, every presumption is in its favor.

■ Conceding all of which, it is not considered to have accomplished the purpose of transmuting the national character of the ship, i. e., its domicile, into that of a vessel of the Republic of Honduras, so as to affect the legal relations of the plaintiff and the defendant. The remedy sought by the plaintiff is not against the ship, but against his employer, a corporation of the United States, and resort to the doctrine urged by the defendant is thought to be unavailing to destroy the plaintiff's rights based upon the legislation enacted by Congress for the benefit of American seamen.

If a contrary result were to be reached, shipowners in this country could evade the requirements of our shipping law, by resorting to the expedient of registering their ships under the flags of such countries as do not require vessel ownership on the part of their citizens. In making which observation, there is no intention to indicate that there is anything in this record to lead to the belief that such was this defendant's purpose.

It is considered that this case does not offend against the rule established in the Ross Case, supra, and those which follow it, because the domicile of the Castilla has always been that of her owner, a corporation of the United States; and the court, having so discovered by examining her registry, is justified in exacting from her owner obedience to the laws of the United States governing the relations of master and servant in the maritime sense.

■ The 1928 treaty between this country and the Republic of Honduras contains the following: "Article X. Merchant vessels and other privately owned vessels under the flag of either of the High Contracting Parties, and carrying the papers required by its national laws in proof of nationality shall, both within the territorial waters of the other High Contracting Party and on the high seas be deemed to be vessels of the party whose flag is flown." This is urged as requiring the granting of the defendant's motion.

The duty which rests upon the courts to give effect to the treaties of the nation, as expounded in Asakura v. Seattle, 265 U. S. 332, 44 S. Ct. 515, 68 L. Ed. 1041, is too clear to admit of discussion. If the treaty above quoted means that, the Castilla being deemed to be the vessel of the Honduran Republic, the defendant may avoid the obligations imposed upon it by the Jones Law, then the treaty must prevail, and the plaintiff cannot succeed in this action. Is that what the treaty means?

In the first place, it will be recalled that this is not a proceeding in rem. The Castilla may continue to fly the Honduran flag, and thereunder to pursue her lawful occasions, quite without reference to the plaintiff's success or failure in this case, the object of

which is to procure a money judgment against an American corporation.

In the second place, it is not herein sought to demonstrate that the Castilla, in virtue of her American domicile and Honduran registration, is not a vessel of the Honduran Republic, within the contemplation of that registration. It would not be seemly to suggest that such registration is lacking in any essential to accomplish the complete identification of the vessel as one entitled to sail under the Honduran flag, for all purposes involving international relations on the part of either vessel or owner. Moreover, this court is not called upon to construe that registry, because it is not drawn into question as such. For these reasons, it is thought that the treaty is not involved in the plaintiff's cause of action.

The decision of this case is confined to the holding that, as between the plaintiff and the defendant, the contract of employment has not been shown to exclude the plaintiff's rights under the Jones Law; that this result is not affected by the registration in question, because, for the purposes of this litigation, the domicile of the Castilla has not been shown to have been changed from that of her owner to that of the Republic of Honduras so as to constitute the vessel a floating portion of that country for the purpose of depriving the plaintiff of the status which he would have enjoyed if the vessel had sailed under the flag of her owner's domicile.

It follows that the provisions of the Jones Law are held to apply to the plaintiff, and the defendant's motion for a directed verdict must be denied, with exception.

It is considered that the defendant has made an appropriate motion to set aside the verdict upon all grounds, and that the motion has been denied, with exception.

Settle order on notice.