FRANCISCO U. CHINCHILLA, Plaintiff, *v.* FOREIGN TANKSHIP
CORPORATION, Defendant.

City Court of the City of New York, Trial Term, New York County,
June 29, 1949.

*J. Justin Franco* for plaintiff.

*Mark W. Maclay* for defendant.

COLEMAN, J. Plaintiff, a former radio operator on a vessel of the defendant, sues to recover damages for breach of contract of employment, alleging that after his recuperation ashore from an injury received on the vessel the defendant declined to permit him to resume his employment. The question is whether the contract of employment was for a period for which the plaintiff contends. There was testimony as to the law of the Republic of Panama, under whose flag the vessel sailed and both sides seem to agree that Panama law governs the case; but the question of the plaintiff's term of employment and his right to recover is to be determined, as will be seen, by reference to our own law.

On January 3, 1947, the plaintiff signed articles in a Spanish port, the articles reciting that the vessel was bound " to any ports or places in the world as the Master may direct, for a term not exceeding twelve months." There was no single voyage or succession of separate voyages. The vessel, an oil tanker, proceeded from port to port in the Near East, the Mediterranean, and elsewhere; no entry into or departure from a port constituted the beginning or end of a " voyage ". The plaintiff was injured on February 3, 1948. He continued on board and performed his work until April 1, 1948, when, to secure medical treatment, he left the vessel at Tenerife, signing off articles and receiving a certificate of discharge. He also received a document from the master certifying to his ability

as radio operator, in which the master stated that " he is now leaving the vessel to undergo an operation on his knee and I wish him a speedy recovery and return to duty on board."

On June 5, the plaintiff, who had received medical care in Madrid notified the defendant that he was ready to resume employment but he was informed that it was impossible to reassign him. He was offered his wages from June 3d to June 15th in a statement that said his services were to terminate on the latter date. He now sues for his wages until January, 1949.

Plaintiff's position is that he was required to serve one year by virtue of the shipping articles and of another document which he signed when he joined the vessel and that on the expiration of the year his term of employment was extended for another year. While the defendant's position is not clear, it seems to be that employment for " not exceeding twelve months " made the hiring one at will; that if there was a hiring for twelve months, the articles required plaintiff to continue his work for an additional three months' period and, the plaintiff, having physically severed his connection with the vessel within the three months' period as extended, there was no obligation upon the defendant to continue his employment.

Assuming the defendant to be correct in its contention that a hiring upon a vessel bound from port to port in foreign trade for a term " not exceeding twelve months " is a hiring at will — a contention as to which there is doubt, as there was no specific " voyage " (cf. *Farrell* v. *United States,* 336 U. S. 511), the defendant cannot argue that point here. The articles made the " Conditions of Employment of Officers " a part of the agreement of employment as far as it relates to officers. On signing on, the plaintiff signed such a document. Among other things the " Conditions " fixed the plaintiff's wages (the record does not show that the wages were recited in the articles themselves). Section IV, " Period of Enlistment " provided: "(A) Officers agree to serve for a period of not less than 12 months unless sooner relieved for cause. Should the prescribed period of actual enlistment terminate without suitable relief being present, officers agree to continue to serve in their respective capacities until suitable relief is provided but such additional duty is not to exceed 3 months. If mutually agreed with the Owner, an officer may serve continuously an additional period or periods of enlistment." (The articles [cl. 8] contained a similar provision for a three months' extension.) Whatever doubt there may have been as to the term of employment from the

articles is removed by the " Conditions of Employment." The plaintiff was employed for a full year.

In January, 1948, the vessel was at sea and the plaintiff's services continued either by necessity or by virtue of the provisions as to the three months' extension. That period ended April 2d and by that time the plaintiff had already signed off. But on March 9th, and while the vessel was still at sea the plaintiff signed another " Conditions of Employment of Officers " dated January 1, 1948. This provided for a substantial increase in salary effective retroactively to January 1, 1948. It also contained a clause as to the period of enlistment similar to that in the earlier " Conditions ". The basic question is whether the signing of this paper continued the plaintiff's employment for one year beyond the first year. Bearing in mind the provision in clause 8 of the " Conditions " as to serving an additional period " If mutually agreed ", I think the answer to the question should be in the plaintiff's favor. The plaintiff testified that at the end of the first year he discussed with the master the matter of his continued employment. I give full force to a stipulation between the parties that the master, who was not present at the trial, would have testified that he made no commitments to the plaintiff for a succeeding year and that he did not represent to him that the signing of the document on March 9th extended the term of employment beyond the three months' extension. But I do accept the plaintiff's testimony that in the course of his talks with the master he was told that while the latter could not speak definitively about salaries and the like he did know that salaries were to be increased. I accept the plaintiff's testimony that toward the end of February he, himself, as radio operator, received a message from the defendant addressed to the master, referring to increases of salaries, and his testimony that the document of March 9th was signed at that time only because it was not ready sooner. These facts indicate that the parties understood that a new agreement was in the offing and, since the salaries were paid pursuant to it retroactively to January 1st, that the agreement was for a term of one year. The conduct of the parties resulted in an agreement, pursuant to the " Conditions ", " to serve continuously an additional period * * * of enlistment."

This conclusion is fortified by the circumstances attending the plaintiff's leaving of the vessel and the employment of a successor radio operator; and by the letter the plaintiff received from the master. If the defendant's contention is correct the

term of employment ceased on April 2, 1948, the day after the plaintiff left the vessel. Before the plaintiff left the vessel and when it was ascertained that the condition of his knee would not improve without an operation ashore, the defendant attempted to obtain someone to take his place. A substitute was secured to join the vessel at Suez on March 22d. A month before that and before taking on the substitute the defendant asked the plaintiff whether he wished to return to the vessel when he was fit for duty as the substitute desired to know what his term of employment would be, and the defendant was informed, through the master, that the plaintiff would return in about two months. The fact that the plaintiff signed off and received a certificate of discharge in April did not discharge the defendant's obligation for wages if the period of employment extended beyond that date; so much the defendant con-. cedes (cf. *National Labor Relations Bd.* v. *Waterman S. S. Corp.*, 309 U. S. 206, 212). Moreover, there was no thought of discharge for any reason whatsover. The certificate of the master, not the formal certificate of discharge but the letter wishing the plaintiff " a speedy recovery and return to duty on board " negatives the inference that discharge was intended or that the period of service was at an end. The defendant now does not attempt to justify the discharge for cause; indeed, it cannot. In those circumstances the case stands as one where the plaintiff without justification was denied the opportunity to continue his employment to the end of the term. For that he is entitled to damages. He attempted to secure employment as a radio operator after June 12th, but was unable to do so. His damages are the amount of wages he would have received — $225 a month plus $7 a day for maintenance (the agreed figure) for 7½ months — a total of $3,262.50, and there will be judgment in the plaintiff's favor in that amount.

I have discussed the question on the basis of our own law. Does our law apply? On the trial the parties took the position that Panama law governed and there was testimony as to that law. But the testimony was far from clear and perhaps the best we can say is what the defendant says in its brief — that the Panama law is " in conformity with generally accepted maritime principles," including, I suppose, our own. On the basis of those principles I believe the plaintiff is entitled to recover. But I prefer to rest my decision upon more solid grounds than this forthright acknowledgment on the part of the defendants. The defendant owner is a Panama corporation and the vessel is

of Panamanian registry. If the " law of the flag " applies in rigor to all cases, Panama law would govern; but we can hardly say that it does. (Cf. *Uravic* v. *Jarka Co.*, 282 U. S. 234; *Cunard S. S. Co.* v. *Mellon*, 262 U. S. 100; *Kyriakos* v. *Goulandris*, 151 F. 2d 132; *Gerradin* v. *United Fruit Co.*, 51 F. 2d 417.) And while parties to a transaction do not have complete autonomy in the choice of law that governs that transaction (cf. *Louis-Dreyfus* v. *Patterson Steamships, Ltd.*, 43 F. 2d 824; *Gerli & Co.* v. *Cunard S. S. Co.*, 48 F. 2d 115) circumstances may indicate that for some purposes they refer to the law of a sovereign other than the one which would normally govern as controlling in a limited way their respective rights and duties; and those indications will be respected. (*Compania de Inversiones Internacionales* v. *Industrial Mtge. Bank*, 269 N. Y. 22; *Louis-Dreyfus* v. *Patterson Steamships, Ltd.*, 43 F. 2d 824, *supra*.)

Here if we assume that the *locus contractus* is on the high seas and therefore, by fiction in the territory of Panama, I think, that reference to our law nevertheless is indicated. The articles and the " Conditions of Employment " are in English, they follow our modes of expression and terminology, they express payments in American dollars. The address of the owner is recited to be in California and all communications relating to the plaintiff's services emanated from the California office or from the office in New York. There is nothing to suggest that any of the acts of the parties has its " locus " in Panama, except the flag of the vessel.* There are a few references to Panama law in the articles, but they are inapplicable to this case. The " Conditions of Employment " which, as I have said, deal in great detail with wages, length of services, promotions, bonuses and the like provide " that Panama law shall apply in all cases of illness or injury incurred while in the service of the vessel." In view of these facts it is fair to assume that except as otherwise provided in the articles and the accompanying document, the application of Panama law was to be limited to a claim based upon injury or illness. That is not

---

* I have not considered the "Conditions of Employment" signed by the plaintiff October 1, 1947, when the vessel was in the port of San Francisco. That was similar in form to the other two I have considered, but provided for an increase in wages as of June 1, 1947. If we were to take this as a separate and new agreement of hiring, we might attribute to the fact that the hiring was in San Francisco the consequence that our own law prevails. (Cf. *Patterson* v. *Bark Eudora*, 190 U. S. 169; *Kyriakos* v. *Goulandris*, 151 F. 2d 132, *supra*.) Neither side has emphasized this circumstance and there was in fact no new hiring except in a very technical sense. There was merely an increase in wages.

the claim here; it is not a claim for maintenance and cure or other indemnity. It is a claim for breach of contract of employment and as the defendant concedes, the only question is the duration of the plaintiff's employment. Why then should our own "internal" law not apply? Basically it is our law that governs from the mere fact that the litigation is before us; it is a truism that a case before the courts of New York is to be decided by New York law. History and policy may suggest an inquiry for certain purposes into the law of another jurisdiction in order to determine that litigation (cf. *Uravic* v. *Jarka Co.,* 282 U. S. 234, *supra*) but unless they do, we decide a case by reference to our own corpus juris unenriched by incorporation of foreign law. Our policy — long standing and generally — of course, is to look to the "law of the flag". But the parties here have indicated that they wish to have the consequences of certain of their acts removed from the power of Panama to determine — that wish will be respected — and the alternative law is that of the forum wherein they find themselves.